THOMAS MAY, EXECUTOR (ESTATE OF ELEANOR
MAY) *v.* JOHN RETARIDES ET AL.
(AC 24337)

Bishop, West and Peters, Js.

Argued March 29—officially released June 8, 2004

*Thomas J. Weihing*, for the appellant (plaintiff).

*Ronald F. Bozelko*, for the appellees (named defendant et al.).

*Opinion*

PETERS, J. Under General Statutes § 45a-98 (a) (3), a Probate Court is authorized to "determine title . . . to any . . . intangible property that constitutes, or may constitute, all or part of any . . . decedent's estate . . . ." In this case, the intangible property consists of the proceeds of a homeowners' insurance policy that were paid as compensation for the loss of personal property in a fire that occurred on the property of the decedent. The principal issue is whether the estate has

a priority claim to recover the decedent's losses or whether all of the proceeds must be distributed, pro rata, to compensate for additional losses suffered by other family members who also resided at the property. Both the Probate Court and the trial court resolved this issue in favor of pro rata distribution. The estate has appealed. We affirm the judgment of the trial court.

The plaintiff, Thomas May, executor of the estate of his mother, Eleanor May (decedent), appealed to the Superior Court from a decree of the Probate Court for the district of Stratford.[1] The plaintiff challenged the validity of that court's decree ordering fire insurance proceeds to be apportioned, 26 percent to the decedent and 74 percent to the defendants John Retarides and Katherine Retarides[2] for personal property losses resulting from a fire on premises owned by the decedent. The defendants are two of the decedent's relatives, who resided at the property and who also suffered fire losses. The trial court, sitting as a Probate Court; *In re Andrews' Appeal from Probate*, 78 Conn. App. 429, 431, 826 A.2d 1260 (2003); upheld the order for pro rata distribution.

In his appeal, the plaintiff's principal argument is that the judgment of the trial court should be reversed because only the decedent was insured under the policy. Alternatively, the plaintiff argues that, if apportionment of the proceeds was warranted, then the apportionment formula adopted by the Probate Court was improper.

The parties stipulated to many of the relevant facts. The decedent was the sole owner of a residence located

[1] The defendants initiated the present action by filing in the Probate Court a motion requesting "payment of funds wrongfully held by the executor."

[2] John Retarides is the grandson of the decedent, and Katherine Retarides is her daughter. The plaintiff named other beneficiaries as defendants. We refer in this opinion to John Retarides and Katherine Retarides as the defendants.

at 330 Castle Drive in Stratford. The decedent's adult daughter, Katherine Retarides, and the daughter's two sons, John Retarides and James Retarides,[3] have resided there since 1983.

In 1998, the decedent obtained a homeowners' insurance policy issued by Royal Indemnity Company that provided coverage of $70,000 for the loss of personal property. The declarations page listed the decedent as the named insured.

This policy was in effect on May 14, 2000, when the insured residence and personal property located therein were severely damaged by a fire. The fire was a covered peril under the homeowner's insurance policy. As a result of the fire, the decedent and the defendants lost personal property valued at $144,284.56.[4]

Before her death, the decedent hired Biller Associates, a public insurance adjuster, to adjust the fire loss on her behalf.[5] In due time, the insurer issued a check to the estate in the amount of $70,000.

The Probate Court admitted the decedent's will to probate and appointed the plaintiff as executor of her estate. Asserting that the insurance proceeds should be distributed in accordance with the decedent's will, the plaintiff declined to share any of these proceeds with the defendants. Both the Probate Court and the trial court agreed with the defendants that the plaintiff's position was untenable.

The trial court concluded that the insurance policy provided coverage for the loss of the defendants' personal property in the fire that occurred on May 14, 2000.

---

[3] James Retarides is not a party to this appeal.

[4] Of this sum, the decedent's personal property loss was $37,513.99, her daughter's loss was $92,242.11 and her grandson's loss was $14,428.46.

[5] Katherine Retarides cosigned the contract with the decedent retaining Biller Associates. Nevertheless, the parties have stipulated that the decedent hired the adjuster.

It further concluded that the insurance proceeds, which were insufficient to cover all the personal property losses that had incurred, were best allocated by using the pro rata distribution formula adopted by the Probate Court. Accordingly, the court awarded Katherine Retarides, $44,800 and John Retarides, $7000. The estate received $18,200.[6]

In this appeal, the plaintiff challenges the validity of each of the trial court's conclusions. We will consider each of these challenges separately.

I

PARTIES INSURED UNDER THE POLICY

The plaintiff first challenges the trial court's conclusion that the defendants were insured parties under the terms of the homeowners' insurance policy obtained by the decedent. Specifically, the plaintiff argues that, because only the decedent was described as a named insured in the policy and only she was the payee of the proceeds check, she was the only person who was insured by the policy. We agree with the trial court that, read in its entirety, the insurance policy provides to the contrary.

The plaintiff's argument requires analysis of the terms of the insurance policy. In the absence of a claim of ambiguity, the interpretation of an insurance contract presents a question of law. We will, therefore, undertake a de novo review of his position. See *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, 267 Conn. 512, 519, 838 A.2d 993 (2004).

In this case, although only the decedent is identified as the named insured, the policy provides coverage to other persons in the section titled "Coverage C." The

---

[6] Apparently, these calculations did not take into account Biller Associates' fee of 10 percent of the proceeds, which evidently is the subject of other pending litigation.

policy states that "[w]e [the insurer] cover personal property owned or used by an 'insured' while it is anywhere in the world . . . ." The policy then defines "insured" as "you [the named insured] and *residents of your household* who are: a. *Your relatives* . . . ." (Emphasis added.)

Because the defendants were members of the decedent's family who resided at the decedent's property, the trial court concluded that each of the defendants was an insured under the policy. The court noted that the coverage provision did not distinguish between a "named insured" and an "insured."

On appeal, the plaintiff has not taken direct issue with the trial court's analysis. He has not questioned the accuracy of the trial court's underlying factual findings of residency or consanguinity as it relates to either of the defendants. He has not asserted that the relevant language in Coverage C is ambiguous. Indeed, the plaintiff's brief is surprisingly silent about the implications of this policy language.

The plaintiff asks this court to rule in his favor on the basis of three other provisions in the insurance policy. According to the plaintiff, these provisions demonstrate that the defendants did not qualify as insured persons. Like the trial court, we are not persuaded.

The plaintiff first points to another section in Coverage C, which states that "[a]t your request, we will cover personal property owned by: 1. Others while the property is on the part of the 'residence premises' occupied by an 'insured' . . . ." No evidence was offered at trial that the decedent had purchased such additional coverage. On this state of the record, the plaintiff maintains that the defendants should be characterized as "others" and therefore had no insurable interest.

Although the policy does not define "others," we conclude that the plaintiff's argument is unpersuasive. The

policy provision itself expressly distinguishes "others" from "insureds." In relevant part, the policy provides that coverage of the personal property of "others" depends on a showing that the property was located at the residence of an "insured." Because the defendants fall squarely within the policy description of those who are insured, they are not "others."

Alternatively, the plaintiff directs our attention to a policy condition describing the responsibilities of the insurer in the event of the death of the named insured during the term of the policy. This section provides that, "[i]f any person named in the Declarations or the spouse, if a resident of the same household, dies: a. We insure the legal representative of the deceased but only with respect to the premises and property of the decedent covered under the policy at the time of death . . . ."

In the plaintiff's view, this language indicates that the coverage provided by the policy is limited to property owned by the decedent. The plaintiff's reasoning is flawed in two significant respects. First, the plaintiff overlooks the fact that, in this case, the claim for coverage concerns events that predated the death of the named insured, the decedent, and was submitted to the insurer prior to the death of the named insured. This provision therefore is irrelevant on its face. Second, the provision does not purport to provide guidance about the rights of insureds other than the named insured in proceeds arising out of a covered event predating the death of the named insured. In effect, the provision simply defines the successor insured for whom the policy provides coverage for the remainder of its term.

Finally, the plaintiff attaches significance to a severability clause in the insurance policy, which states that "[t]his insurance applies separately to each 'insured.' " According to the plaintiff, this language indicates that

each insured had a separate duty to comply with the terms of the policy in order to claim coverage. In the plaintiff's view, because only the decedent hired the public insurance adjuster and only she provided him with an inventory of the property losses on the premises, the defendants are not entitled to a share of the insurance proceeds because they failed to perfect their claim to a share of the proceeds. We disagree.

The plaintiff overlooks the relevant terms of the policy with respect to a claim for a loss of covered personal property. The policy requires that someone must notify the insurer, must protect the property from further damage and must prepare an inventory of the damaged property. The policy expressly assigns these responsibilities to the named insured. It states that "*you* must see that the following are done." In its definitional section, the policy defines "you" as a reference to the "named insured." As a result, the decedent, and not the defendants, had the sole right and obligation to file such a claim. The defendants cannot be faulted for failing to do what they were not required to do.

The plaintiff also argues that the decedent's engagement of the public insurance adjuster compels the inference that the claim was submitted solely on her behalf. That inference is unwarranted. As the trial court noted, while the decedent's own property loss was only $37,513.99, the recovery from the insurance company was for the maximum policy limit of $70,000. The court concluded, and we agree, that "[i]t is not logical for the court to infer that the insurance company would overpay the claim for losses of the decedent's personal property . . . ." Rather, the court correctly inferred that the insurer made a payment of $70,000 after the submission of claims for $144,284.56, the stipulated loss of all three parties.

In sum, we find that the plain language of the insurance policy demonstrates that the defendants had insur-

able interests. The fact that the defendants might have obtained their own insurance does not extinguish their rights under this policy. None of the provisions cited by the plaintiff calls into question the plain meaning of Coverage C. "[C]ourts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Internal quotation marks omitted.) *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, supra, 267 Conn. 519.

## II

## DISTRIBUTION OF PROCEEDS

The plaintiff also argues that the trial court abused its discretion in its allocation of the insurance proceeds among the estate and the defendants. Rather than dividing the proceeds pro rata, he maintains that the court should have recognized that the estate had a priority claim because the decedent had obtained the insurance policy and was described therein as the named insured.[7] We are not persuaded.

As an initial matter, we note that the fund created by the insurance proceeds will not be further enlarged by future payments from the insurer. It is undisputed that the policy authorized payment to the decedent and

---

[7] At various occasions, the plaintiff has also argued that the estate had a right to all of the insurance proceeds despite the fact that the decedent's own losses were only $37,513.99. The plaintiff has not explained how an insured can require an insurance company to pay any amount in excess of the loss that the insured has suffered. "[F]ire insurance is a contract of indemnity against *actual* loss sustained by the insured, in an amount not exceeding that stipulated in the policy . . . . 1 G. Couch, Insurance (2d Ed. Rev. 1984) § 1.52." (Emphasis added; internal quotation marks omitted.) *Steiner* v. *Middlesex Mutual Assurance Co.*, 44 Conn. App. 415, 430, 689 A.2d 1154 (1997). The policy in this case expressly provides: "Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss: a. To the 'insured' for more than the amount of the 'insured's' interest at the time of the loss . . . ."

that the check was in fact payable to her. The insurer's payment of the full amount of coverage to the decedent's estate discharged its obligations to all of the insured parties.

We further note that there is no dispute about the applicability of the principle of equitable distribution that the trial court invoked. The plaintiff does not dispute the underlying proposition that the proper apportionment of the insurance proceeds required the trial court to exercise its equitable discretion. See *Century Indemnity Co.* v. *Kofsky*, 115 Conn. 193, 200, 161 A. 101 (1932).

Under such circumstances, the scope of our appellate review is limited. "The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . Our standard of review is whether the trial court abused its discretion. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Tuxis-Ohr's, Inc.* v. *Gherlone*, 76 Conn. App. 34, 47, 818 A.2d 799, cert. denied, 264 Conn. 907, 826 A.2d 179 (2003).

The trial court described the proceeds generated by the insurance policy as a "common fund." The court referred to the equitable principle that, if a common fund is insufficient to pay the claims of all the participants in the fund in full, the fund should be distributed pro rata. Applying this principle, the court awarded $18,200 to the plaintiff, $44,800 to the decedent's daughter and $7000 to the decedent's grandson.

The plaintiff claims that the trial court's distribution of the insurance proceeds is inequitable in light of the primary role that the decedent played in obtaining the insurance policy and in hiring the claims adjuster to

collect on the policy. The crux of the plaintiff's claim is that the decedent, as the named insured, had the first claim on the insurance proceeds that should be honored before any distribution of the funds to the defendants. In other words, he maintains that the decedent's property loss claim should have been paid in full before any payment to anyone else. He has not, however, provided either a legal or a factual basis to support this claim.

As a matter of law, the plaintiff has not cited any authority for the proposition that a named insured should receive an enhanced priority to the detriment of other insureds under an insurance policy. *Yoshida* v. *Security Ins. Co.*, 145 Or. 325, 26 P.2d 1082 (1933), the case on which he relies, is readily distinguishable. In *Yoshida*, a landlord, who was *not* an insured, was not permitted to recover insurance proceeds that were distributed to tenants after a fire at a leased building. Id., 336. In contrast, in this case, as we have already determined, the defendants *were* insured parties.

In the absence of more persuasive authority, the trial court had discretion to distribute the proceeds in accordance with the equitable principle of pro rata distribution. The plaintiff does not dispute the relevance of *Century Indemnity Co.* v. *Kofsky*, supra, 115 Conn. 193, an interpleader action, in which several injured parties sought to recover damages from a tortfeasor's automobile insurance policy that was insufficient in amount to satisfy all their claims. Id., 195–96. The Supreme Court held that the proceeds should be apportioned between the claimants in accordance with the equitable principle of pro rata distribution. Id., 200.

As a matter of fact, the plaintiff has provided no basis for departure from pro rata distribution under the circumstances of this case. He has not attempted to make a factual showing that the decedent's claim was

entitled to priority status because she had incurred cognizable costs associated with obtaining insurance and filing a claim at the outset before any such pro rata distribution. Such costs might have included the payment of the yearly policy premiums or the cost of finding a proper public insurance adjuster.[8] The plaintiff's bare assertion that the decedent provided special benefits to the defendants does not prove his case for special equitable recognition of his claim to the insurance proceeds.

Furthermore, on the present record, the court reasonably might have inferred that the defendants would have recognized an equitable obligation to share proven costs associated with the collection of insurance proceeds. Indeed, the defendants agreed, at oral argument, that they bore financial responsibility for a part of the fee charged by the public insurance adjuster who obtained the insurance proceeds from the insurer.

In sum, the trial court properly interpreted the insurance policy at issue to provide fire insurance protection for the defendants as well as the decedent. It properly exercised its discretion in apportioning the proceeds generated by the insurance policy in accordance with the equitable principle of pro rata distribution.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] Indeed, it is not clear from the record whether the decedent paid either sum. At trial, both John Retarides and George Retarides, the former husband of Katherine Retarides, testified that they had paid a portion of the yearly premium. Neither side produced any documentary evidence.