## JOHN R. DEMATTIA *v.* PATRICIA MAURO ET AL.
## (AC 24433)

## PATRICIA MAURO *v.* JOHN R. DEMATTIA
## (AC 24434)

Foti, Dranginis and Flynn, Js.

1

Argued June 1—officially released November 16, 2004

*Howard C. Eckenrode*, for the appellant (plaintiff in the first case, defendant in the second case).

*Ronald F. Bozelko*, for the appellee (named defendant in the first case, plaintiff in the second case).

*Opinion*

FLYNN, J. John R. DeMattia appeals from the judgments of the trial court rendered in favor of Patricia Mauro[1] ordering the return to her of all sums that she paid to DeMattia in connection with a real estate contract.[2] On appeal, DeMattia claims that the court improperly (1) found that as of July 31, 2000, Mauro had obtained a mortgage commitment and was ready, willing and able to complete the real estate closing, (2) found that the period between June 15, 2000, the contractually scheduled closing date, and October 24, 2000, was a reasonable time for Mauro to close and (3) ordered all moneys paid to DeMattia, including the second nonrefundable sum of $10,000, returned. We affirm the judgments in part and reverse them in part.

DeMattia was the owner of certain real estate known as 391 Boston Post Road in Orange. He entered into an agreement, dated March 15, 2000, for the sale of the subject property to Mauro. The contract contained a mortgage contingency clause in which the buyer was given a period of forty-five days within which to obtain a mortgage for a term of at least twenty years. The mortgage contingency clause did not specify the amount of the mortgage.

Mauro paid a deposit in the amount of $20,000 at the time the contract was signed, and later paid an additional sum of $10,000 as consideration for the fourth extension of the mortgage contingency. The mortgage contingency clause provided that all sums paid by way of deposit were to be refunded to the buyer in the event that the mortgage contingency was not

---

[1] Zachadoo, LLC, and Arnold Peck's Property World USA, Inc., also were defendants in the first case in the trial court, but are not parties to these appeals.

[2] These appeals arise from a trial that resulted from the consolidation of actions brought by both parties. For purposes of clarity, we refer to the parties by their names to avoid confusion.

4

satisfied and the buyer elected to terminate the agreement. The closing was to have taken place on June 15, 2000, or on some other mutually agreed upon date. Multiple extensions of the time for obtaining a mortgage commitment were requested by Mauro and granted by DeMattia. These parties subsequently agreed that the date to obtain a mortgage commitment finally was extended until July 31, 2000, with the condition that Mauro was to pay an additional sum of $10,000 to DeMattia that was to be nonrefundable, but applied toward the purchase price at closing "[i]f the transaction close[d] . . . ."

On August 31, 2000, DeMattia notified Mauro, through his attorney, that he was ready, willing and able to sell the property and to extend the closing date further as long as multiple conditions were met, including the payment of DeMattia's carrying costs. After further discussions, DeMattia's counsel indicated that his client believed that the contract had been breached and that the deposits would be forfeited unless a closing took place by October 20, 2000. Mauro declined DeMattia's offer and indicated that DeMattia had refused to sign a building permit, a requirement for Mauro to secure financing. A demand then was made by Mauro's counsel for the return of all moneys that had been previously paid both by deposit and for the last extension to July 31, 2000, to obtain a mortgage.

DeMattia and Mauro each brought separate actions. DeMattia brought an action against Mauro and other defendants asking the court to declare that all payments made under the agreement be forfeited to DeMattia and a judgment that Mauro and the other defendants had no right, title or interest in or to the land described in the agreement, and seeking damages and such other relief as the court deemed fair and equitable. Mauro and another defendant counterclaimed and asked the court for a return of the $30,000 paid, damages, punitive

damages, attorney's fees and interest. Mauro also brought her own action against DeMattia, and although she did not specifically state her prayer for relief, she did state that the amount of legal interest or property in demand was greater than $15,000, exclusive of interest and costs. These actions were consolidated at trial and heard together. The court found that Mauro had been ready, willing and able to close the transaction as of July 31, 2000, and that DeMattia had interfered with the closing by refusing to sign the building permit. The court ordered the return of all moneys paid by Mauro. These appeals followed.

On appeal, DeMattia makes three claims attacking the court's factual findings. He first contends that the court's finding that Mauro was ready, willing and able to complete the transaction as of July 31, 2000, is not supported by the subordinate facts, but that even if it were, Mauro was not prepared to close within a reasonable time thereafter. He next contends that the period between June 15, 2000, the contractually scheduled closing date, and August 31, 2000, was a reasonable time for Mauro to close the transaction contemplated by the parties and that he was entitled to carrying charges after that date. Finally, DeMattia contends that the court's finding that Mauro was entitled to the return of all sums paid, including the second nonrefundable payment, was contrary to the evidence and the agreement of the parties.

Our standard of review as to the court's factual findings is whether those findings are clearly erroneous in light of the evidence and pleadings or, if there is evidence to support them, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. See *Allen* v. *Johnson*, 79 Conn. App. 740, 746, 831 A.2d 282, cert. denied, 266 Conn. 929, 837 A.2d 802 (2003).

I

We first turn to DeMattia's claim that the court improperly found that, as of July 31, 2000, Mauro had obtained a mortgage commitment and was ready, willing and able to complete the real estate closing. We disagree with this claim.

The court found that Mauro was ready, willing and able to complete the transaction as of July 31, 2000, and that she had gained the necessary mortgage commitment by this date. See *Steiner* v. *Bran Park Associates*, 216 Conn. 419, 423, 582 A.2d 173 (1990) (at time of closings buyer must be ready, willing and able to purchase property). The evidence that was presented at trial supports these findings.

The record reveals that the contract contained a mortgage contingency clause and that several extensions were given until the date for Mauro to obtain the mortgage finally was extended to July 31, 2000. On the basis of the testimony of Mauro and the exhibit of the commitment documentation from CIT Small Business Lending Corporation (CIT), a financial corporation that made the commitment to extend a loan in excess of the purchase price, we conclude that the finding of the court that the mortgage commitment was obtained from CIT in a timely manner was not clearly erroneous. Although Mauro's copy of the commitment letter in evidence was not signed, the court was in the best position to determine credibility issues regarding Mauro's testimony that the original commitment letter was signed before July 31, 2000. Although certain requirements necessary to obtain the funding of the mortgage had not yet been fulfilled on July 31, 2000, the fact that the commitment contained several customary contingencies did not affect its validity, and Mauro still could have been found to be a ready, willing and able purchaser. See *Romaniello* v. *Pensiero*, 21 Conn. App. 57, 62, 571 A.2d

145 (1990). Therefore, all contingencies in the contract had been completed and Mauro was a ready, willing and able purchaser, who was entitled to a reasonable amount of time in which to close the transaction.

## II

DeMattia maintains that the time period between June 15, 2000, the scheduled closing date, and August 31, 2000, DeMattia's alleged conditional closing date,[3] constituted a reasonable time period in which Mauro could have closed the transaction and that the court's finding that October 24, 2000, was a reasonable date for Mauro to close was improper. He therefore contends that his imposition of carrying charges was reasonable after that date. We disagree.

"In real estate contracts, the fact that a specific time is fixed for payment or for conveyance does not make time of the essence—at least, it does not make performance at the *specified* time of the essence. . . . When the parties to a real estate contract want to fix a specific date for performance, we generally have required them to express specifically in the contract that time is of the essence; otherwise, performance within a reasonable time will satisfy the contract." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Tulisano* v. *Schonberger*, 74 Conn. App. 101, 106, 810 A.2d 806 (2002). "Ordinarily, what constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of each case. . . . In determining what is a reasonable time, we must look to the act requested." (Citations omitted; internal quotation marks omitted.) *Brzezinek*

---

[3] DeMattia testified that there was a set August 31, 2000 closing date, but there was no documentation in evidence showing that he gave such a notice. The court did find that he sent a letter on this date attempting to set a fixed closing date of September 8, 2000, which will be discussed later in this opinion.

v. *Covenant Ins. Co.*, 74 Conn. App. 1, 5–6, 810 A.2d 306 (2002), cert. denied, 262 Conn. 946, 815 A.2d 674 (2003).

The court found that because several extensions had been granted to allow Mauro time to obtain the required financing, this necessarily extended the time of closing beyond that which was set forth in the contract. We agree with this conclusion. Although the June 15, 2000 closing date was never extended formally, the extension of the mortgage contingency to July 31, 2000, necessitated that the closing date would necessarily have occurred at a date later than June 15, 2000.

DeMattia, subsequently, gave written notice on August 31, 2000, to fix the closing date at September 8, 2000, with time being of the essence. As a part of this first attempt to set a fixed closing date of September 8, 2000, DeMattia also demanded (1) that Mauro pay the carrying costs of the property at $250 per day from September 1, 2000, to the date of closing; (2) that the September 8, 2000 date would be based on time being of the essence and (3) that all of the $30,000 previously paid, not just the $10,000, would be nonrefundable but would be credited to the buyer at the time of the closing. Either party to a real estate contract may make formal demand that title be closed by a certain day when time is not already of the essence, but the date demanded for performance must be reasonable. See *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission*, 58 Conn. App. 441, 446, 755 A.2d 249 (2000).

DeMattia does not refer us to any authority that permits a seller, when setting such a fixed date where time was not previously of the essence, to place conditions changing the consideration payable by the other party to the contract, nor are we aware of any. Because of the unilateral change in payments by the buyer with which DeMattia hobbled his attempt to fix a firm date, we conclude that DeMattia's attempt to fix September

8, 2000, as a firm date for the closing of title was ineffective. A seller in such a situation would have the right to fix a time which was of the essence for conveyance, as long as that date was reasonable. The seller does not have the right to change the terms of payment unilaterally as DeMattia so attempted. Paragraph eighteen of the contract between the parties provided that any amendments to the contract would not be effective unless they were reduced to writing.[4] Mauro never agreed in writing to payment of DeMattia's carrying costs, and therefore could not be bound to a September 8, 2000 closing date or to any of the other additional conditions that DeMattia attempted to set, including making all $30,000 previously paid nonrefundable. DeMattia had the right to set a reasonable closing date. However, his attempt to set September 8, 2000, was ineffective because he had placed additional payment conditions on his agreement to set such a date, to which Mauro had not agreed. Therefore, the court properly disregarded the September 8, 2000 date.

DeMattia never made a subsequent demand for a fixed date. It was nearly three months after Mauro was, as found by the trial court, a ready, able and willing purchaser that DeMattia refused to sign the building permit needed by Mauro to obtain her financing. During the week of October 24, 2000, Mauro demanded the return of all sums that she had previously paid because of this alleged breach by DeMattia. The court was left to determine if the time of DeMattia's alleged breach

---

[4] DeMattia points out that he offered evidence that Mauro's attorney, Ronald Bozelko, orally had agreed to the condition of additional payment of the carrying costs. An attorney's actions can bind his client; see *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 496, 234 A.2d 825 (1967); but the attorney cannot change the terms of a written agreement that requires any amendment to be in writing. In this case, the court did not find that Bozelko had so agreed, although it did find that DeMattia claimed that Bozelko had done so. The court specifically found that such an agreement was never put into writing.

was within the reasonàble time period within which Mauro had to close the transaction or, alternatively, if Mauro breached the agreement by failing to close the transaction within a reasonable time. See *Brezezinek* v. *Covenant Ins. Co.*, supra, 74 Conn. App. 5.

"Ordinarily, what constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of each case." (Internal quotation marks omitted.) Id. We look at the record to determine whether the court's finding that October 24, 2000, was a reasonable time was clearly erroneous. The evidence in the record included, inter alia, the following factors supporting the court's finding: (1) the property had to be surveyed; (2) hazardous oil needed to be removed from the ground; (3) there were problems with the location of the parking lot at least partly on the neighbor's land; (4) a bond was needed before the parking lot could be paved; (5) a certificate of occupancy needed to be obtained; and (6) a ninety-four item checklist had to be completed before the mortgage lender would fund the commitment. With these facts before it, we cannot conclude that the court's determination that October 24, 2000, was a reasonable time for conveyance was clearly erroneous.

## III

DeMattia's final claim is that the court improperly ordered him to return all moneys paid, including the second nonrefundable $10,000 payment. We agree in part and disagree in part.

The court found that DeMattia's failure to sign the application for the building permit was the reason the closing did not occur. Mauro could not obtain her financing without the signature. Although the court specifically found as a fact in its memorandum of decision that the second payment was nonrefundable, it ordered that the "deposits" be returned to Mauro, including the

nonrefundable $10,000 payment. In doing so, the court implicitly construed the contract between the parties to require the seller to sign the building permit. Our standard of review is plenary when we review a court's construction of a contract and its legal effect. See *Issler* v. *Issler*, 250 Conn. 226, 236, 737 A.2d 383 (1999).

Nothing in the written contract between the parties bound DeMattia to sign a building permit, and the parties specifically had agreed in their contract that only written contractual language could bind them. Because the court failed to find any damages specifically and ordered only the return of the deposits, it appears that the court simply ordered rescission and partial restitution. "Rescission and restitution are equitable remedies. . . . The remedy of rescission and restitution is an alternative to damages in an action for breach of contract. . . . Rescission, simply stated, is the unmaking of a contract. It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract. . . . Restitution is [a]n equitable remedy under which a person is restored to his or her original position prior to loss or injury, or placed in the position he or she would have been, had the breach not occurred." (Citations omitted; internal quotation marks omitted.) *Wallenta* v. *Moscowitz*, 81 Conn. App. 213, 240–41, 839 A.2d 641, cert. denied, 268 Conn. 909, 845 A.2d 414 (2004).

We need not decide whether the court was correct in finding that DeMattia breached the contract by failing to sign the building permit. DeMattia consistently stated that he would not hold the closing unless his carrying costs were paid, something that he had no right to demand unilaterally under the terms of the agreement. "If one party to a contract, either wilfully or by mistake, demands of the other a performance to which he has

no right under the contract and states definitely that, unless his demand is complied with, he will not render his promised performance, an anticipatory breach has been committed." 4 A. Corbin, Contracts (1951) § 973, p. 910. Therefore, the court was correct in finding that DeMattia had breached the contract. The court also properly ordered the return of the original $20,000 deposit because the contract called for DeMattia to retain the deposit only if Mauro was the one to breach the agreement.

This is not true as to the second sum. The parties made a separate and severable contract in regard to the $10,000 payment. "[I]t is the general rule that a severable contract is one in its nature and purpose susceptible of division and apportionment. . . . The determinative test is in ascertaining from the language used, read in the light of the surrounding circumstances, what was the intention of the parties. . . . In determining the severability of the contract, the court looks to whether the contract's parts and its consideration are common to each other or independent of one another . . . [See] *Timely Products, Inc.* v. *Costanzo*, 465 F. Sup. 91, 97 n.6 (D. Conn. 1979) (singleness or apportionability of the consideration rendered is a principal test in judging severability)." (Citations omitted; internal quotation marks omitted.) *Venture Partners, Ltd.* v. *Synapse Technologies, Inc.*, 42 Conn. App. 109, 118, 679 A.2d 372 (1996).

On June 28, 2000, Mauro's attorney, Ronald Bozelko, sent the following letter to Morton Dimenstein, who was then acting as DeMattia's attorney: "Dear Mort: This letter will confirm our agreement that the mortgage contingency date will be extended until July 31, 2000 at 5:00 p.m. In consideration of such extension, Mauro & Company will pay your client, John R. DeMattia the sum of $10,000.00, which is nonrefundable. If the transaction closes, the $10,000.00 will be applied to the purchase

price of $525,000.00. Therefore, if this is agreeable with your client, would you kindly sign a copy of this letter consenting thereto." Dimenstein subsequently consented in writing on behalf of DeMattia.

We note that this second payment was not a deposit. Black's Law Dictionary defines "deposit" as "[m]oney lodged with a person as an earnest or security for the performance of some contract, to be forfeited if the depositor fails in his undertaking." Black's Law Dictionary (5th Ed. 1979). The consideration for the additional $10,000 nonrefundable payment was the extension of the mortgage contingency to July 31, 2000, at 5 p.m., which DeMattia granted. This was the last in a long series of extensions that DeMattia was required to grant. By the plain language of the contract, this sum would become a deposit only "[i]f the transaction close[d] . . . ." Both parties met their obligations as required by this separate and severable agreement and, therefore, the payment, as the court factually found, was nonrefundable and DeMattia should have been allowed to retain it. We therefore conclude that the court improperly adjudged that the additional $10,000 payment should be returned because the parties had agreed that the payment was nonrefundable and consideration was exchanged by DeMattia for the payment.[5]

The judgments are reversed only as to the order to refund the $10,000 payment and the cases are remanded with direction to render judgments declaring that DeMattia may retain the $10,000 payment made for the extension of the mortgage contingency to July 31, 2000. In all other respects the judgments are affirmed.

In this opinion the other judges concurred.

---

[5] The court did not find any specific damages proved by either party. Neither party sought an articulation under Practice Book § 66-5, and Mauro has not appealed from the judgments or filed a cross appeal.