## MARIA FERNANDES *v.* EYVIND RODRIGUEZ ET AL.
### (AC 24843)

Schaller, Flynn and McLachlan, Js.

602

Argued January 7—officially released August 9, 2005

*Eyvind Rodriguez*, pro se, the appellant-appellee (defendant).

*Albert A. Lochiatto*, for the appellee-appellant (plaintiff).

*Opinion*

McLACHLAN, J. This action for partition of real estate was initiated almost ten years ago and is now before this court for the second time following a remand by our Supreme Court to the trial court.[1] The defendant Eyvind Rodriguez[2] appeals and the plaintiff, Maria Fernandes, cross appeals from the judgment of the trial court distributing the proceeds of the sale of the parties' jointly owned real estate. As the issues raised by the parties are numerous, we do not introduce them at the outset and instead address them in turn. The judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings.

The parties held title as joint tenants to certain real estate, a triplex consisting of three rental apartments, at 171 Pequot Avenue in New London. The property was purchased by the parties in July, 1994, for $45,900, and G.E. Capital Mortgage Services, Inc., holds a thirty year mortgage on the property in the original amount of $36,000. In April, 1996, the plaintiff commenced an action seeking a partition of the property or, "[i]f a sale would better promote the interests of the co-owners, then a sale of the premises and a division of the pro-

---

[1] See *Fernandes* v. *Rodriguez*, 54 Conn. App. 444, 735 A.2d 871 (1999), rev'd, 255 Conn. 47, 761 A.2d 1283 (2000).

[2] G.E. Capital Mortgage Services, Inc., which had been named as a defendant, is not involved in this appeal. We therefore refer in this opinion to Rodriguez as the defendant.

ceeds, after the payment of the expenses of the sale, between the parties according to their respective rights in the real estate."

By his answer, the defendant agreed to a partition or sale of the property and asserted a two count counterclaim alleging that the plaintiff (1) had been living in the first floor apartment without paying rent and (2) had retained the net rental income for the remaining two apartments. He accordingly sought a money judgment in the amount of one half of the rental value of the first floor apartment and one half of the net rental income collected by the plaintiff on the two remaining apartments.

The issues were tried to the court in August, 1997. By judgment dated September 12, 1997, the court determined that the defendant possessed only a minimal interest in the property and, therefore, ordered him to quitclaim his interest to the plaintiff in exchange for compensation by the plaintiff in the amount $4605. As to the two issues raised by the defendant in his counterclaim, the court determined that while the rental value of the first floor apartment was $500 per month, the defendant was not entitled to one half of the rental value. The court further determined, however, that the defendant was entitled to one half of the net rental proceeds of the two remaining apartments.

From that judgment, the defendant appealed to this court, claiming, inter alia, that the court had exceeded its authority in ordering a partition by payment of money. By decision released on August 10, 1999, we held that the equitable remedy fashioned by the trial court was proper, given its finding that the defendant had only a minimal interest in the property, a finding we concluded was supported by the evidence. *Fernandes* v. *Rodriguez*, 54 Conn. App. 444, 453, 735 A.2d 871 (1999), rev'd, 255 Conn. 47, 761 A.2d 1283 (2000). We also found,

however, that the court had improperly determined that the defendant was not entitled to one half of the rental value of the first floor apartment. Id., 454. The court's refusal to compensate the defendant on this claim had been predicated on its finding that the defendant could have lived in the same apartment with the plaintiff during the relevant time period. We found this reasoning to be improper in light of the fact that the plaintiff had obtained an ex parte restraining order preventing the defendant from entering the premises.[3] Id.

We accordingly affirmed the trial court's judgment as to the equitable remedy it had ordered, but reversed the judgment as to the amount of money to be paid to the defendant by the plaintiff and remanded the case to the trial court for further proceedings to determine the amount the defendant was due for one half of the rental value of the first floor apartment from the date that the plaintiff began her exclusive occupancy to the date of judgment. Id., 454–55.

In December, 1999, the defendant petitioned our Supreme Court for certification to appeal, which it granted, limited to the following issue: "In this partition action, did the Appellate Court properly conclude that the trial court had the equitable power to order the . . . defendant to convey his interest in the property to the plaintiff and the plaintiff to pay the . . . defendant money damages?" *Fernandes* v. *Rodriguez*, 251 Conn. 907, 739 A.2d 264 (1999).

---

[3] It may appear anomalous to determine that the defendant is not entitled to a share of the rental value of the first floor apartment when he had the right to live in the premises but chose not to, but that he is entitled to such share when he was lawfully precluded from entering the premises due to the operation of a restraining order, presumably arising from his misconduct. At no time, however, during the two trials before the Superior Court, the first appeal to this court, the appeal to our Supreme Court or in this appeal did either party raise this issue. Accordingly, and in light of the procedural history of this case, we do not address this issue.

In its December, 2000 decision, the Supreme Court reversed the judgment of this court, concluding that in a partition action, one joint tenant cannot dispossess another except by partition in kind or partition by sale and that the trial court did not have the authority to order the defendant to execute a quitclaim deed to the plaintiff in exchange for the payment of money. *Fernandes* v. *Rodriguez*, 255 Conn. 47, 49, 761 A.2d 1283 (2000). The Supreme Court remanded the case to this court with direction to reverse the judgment of the trial court and to remand the case to that court for a new trial.[4] Id., 60.

In accordance with the remand order, a new trial was held and, on August 10, 2001, a memorandum of decision was issued. Concluding that a physical partition of the property was impractical and would not promote the best interests of the parties, the court rendered judgment ordering a sale of the property. A committee of sale was appointed and a sale date set for November 3, 2001, with the usual terms and conditions, including the following: "$15,000 bank draft or certified check at the time of sale, balance and approval of sale and deed by the court. Deposit forfeited if closing does not take place within thirty days after the court's approval of sale." The case was continued pending sale and approval of the sale by the court, at which time the net proceeds would be distributed in accordance with the respective interests of the parties on the basis of the evidence adduced at trial.

The sale took place on November 3, 2001, as ordered. The defendant was the successful bidder with a bid of $180,300. The required $15,000 deposit was made with the court, and the sale was approved by the court on

[4] There is some disagreement between the parties as to the extent of the Supreme Court's remand. Because the Supreme Court did not expressly limit the scope of the remand, a new trial as to all issues was conducted.

December 4, 2001. In accordance with the terms of the sale, the closing was required to take place on or before January 4, 2002.

By motion filed December 20, 2001, the defendant sought a two week extension of the closing date. Over the plaintiff's objection, this motion was granted and the closing date was extended to January 18, 2002. On January 16, 2002, two days before the scheduled closing date, the defendant, who was residing in Florida at the time, again filed a motion to extend the closing date citing "lender employee error" in the handling of his loan package. The court scheduled a hearing on the motion for the following morning, and all parties were so notified by telephone.

The defendant failed to appear at the hearing, but did file a pleading curiously entitled "Defendant's Response to Hearing of January 17, 2002, on Motion to Extend Closing Date." Therein, the defendant claimed that he was unable to attend the hearing due to short notice, but recounted various reasons why the motion should be granted, including purported delays in the mortgage industry as a whole due to attractive low interest rates. The defendant also asserted various rambling accusations against the plaintiff for purportedly engaging in certain vaguely defined "delay tactics." The court denied the defendant's motion the same day.

The defendant thereafter filed a motion for articulation of the court's denial of his motion. The court granted this motion and issued an articulation on February 11, 2002. The court explained that its refusal to further extend the closing date was based on the defendant's failure to appear at the scheduled hearing and to present evidence as to why an extension should be granted or that, if an extension was granted, a closing could be held within a reasonable time.

In April, 2002, the defendant filed a motion to vacate the sale and requested that his deposit be returned. The defendant cited a litany of reasons, including that the plaintiff had engaged in misconduct and misrepresentation that "had a chilling effect on the bidders" at the auction and that she had refused to allow the property to be inspected by the bidders before sale. He claimed also that the committee of sale had misrepresented certain facts to him following the sale of the property. The court denied the motion to vacate, and the defendant's deposit was forfeited in accordance with the terms of sale, less the committee's fees and expenses. Thereafter, the defendant filed a motion to reargue his motion to vacate the sale. The court denied the motion.

On May 15, 2002, the property not having been sold in accordance with the previous order, the court issued a modified order of sale that established July 13, 2002, as the new date of sale. The previous committee of sale was reappointed and terms for the second sale were set.

In accordance with this modified order, a public sale was held on the premises on July 13, 2002. This time the plaintiff was the successful bidder with a bid of $160,100. This sale was approved on August 19, 2002. The sale proceeded and the net proceeds, in the amount of $123,273.25, were paid into the court, making such funds available for distribution to the parties.

After hearing additional testimony on various issues in May, 2003, the court, on November 4, 2003, issued an eighteen page memorandum of decision setting forth its factual findings, detailing how the sale proceeds should be distributed and addressing various other issues raised by the parties. The court made specific findings respecting (1) the rental value of the first floor apartment and the amount due to the defendant for the plaintiff's use thereof, (2) the amount of the rental income from the remaining two apartments and (3)

the parties' equitable interests in the property. These findings will be discussed in greater detail as necessary. On November 18, 2003, the defendant appealed from the court's judgment, and, on November 28, 2003, the plaintiff filed a cross appeal.

I

The defendant first claims that the court improperly found the plaintiff's equitable interest in the property to be 95 percent and the defendant's interest to be 5 percent, and improperly distributed the proceeds of sale in accordance with these figures. We disagree.

The scope of our appellate review of the trial court's determination is limited. A partition by sale, although a creature of statute, is an equitable action. See, e.g., *Fernandes* v. *Rodriguez*, supra, 255 Conn. 59. "The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . Our standard of review is whether the trial court abused its discretion. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *May* v. *Retarides*, 83 Conn. App. 286, 295, 848 A.2d 1222, cert. denied, 271 Conn. 908, 859 A.2d 562 (2004).

One of the defendant's principal arguments on appeal is that the court's initial finding that each party possessed a one-half interest in the property as joint tenants required the court to award him one half of the proceeds of the partition sale.[5] This contention finds no support in the case law.

In its decision remanding this case for a new trial, our Supreme Court addressed the appropriate distribu-

---

[5] In its memorandum of decision, the court stated: "The plaintiff and the defendant each had an undivided one-half interest in the property."

tion of the proceeds following a partition by sale. The court stated: "As we have stated on other occasions, it is not always true that each tenant in common or joint tenant is entitled to equal shares in the real estate. *Levay* v. *Levay*, 137 Conn. 92, 96, 75 A.2d 400 (1950) (Although each party was the owner of an undivided one-half interest in the property, it does not follow that he or she will necessarily be entitled to equal shares of the moneys obtained from the sale. Equities must be considered and, if established, must be liquidated before distribution is ordered.); see also *Hackett* v. *Hackett*, 42 Conn. Sup. 36, 40, 598 A.2d 1112 (1990), aff'd, 26 Conn. App. 149, 598 A.2d 1103 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). Accordingly . . . the trial court may distribute the proceeds of the sale in accordance with the equitable interest of each party." (Internal quotation marks omitted.) *Fernandes* v. *Rodriguez*, supra, 255 Conn. 60.

Underlying the court's determination as to the respective equities of the parties were several factual findings, most of which are contested by the defendant on appeal. The court found that the plaintiff had contracted to purchase the property in April, 1994, for $45,900 by making a down payment of $500. The plaintiff's father originally was expected to assist in the financing of the property, but after he fell ill, he was unable to do so. The plaintiff instead reached an agreement with the defendant under which they would jointly purchase the property and live there together. Although the property was purchased at least in part as an investment, the court concluded that the plaintiff's motivation was broader, and that she continually resided on the premises since it was acquired and had evidenced a desire to continue to do so.

The court found the monetary contributions of each party toward the purchase to be particularly relevant to its determination of equities. The court found that the

cash and various other credits required for the closing totaled $11,162.46. Of this amount, the plaintiff contributed $6662.46 and the defendant contributed $4500. The court further determined that the defendant obtained the $4500 through a loan from his mother, and that the plaintiff directly reimbursed the defendant's mother $527 for the loan and paid the defendant an additional $3000 between October and November, 1994, to be applied to the loan for a total of $3527.

The court also found that the premises were barely habitable after purchase and required considerable cleaning and repair work. This work was done almost exclusively by the plaintiff. The defendant's contention that he had contributed $6600 for repairs was found by the court not to be credible, and the court concluded instead that he had contributed less than $100. The court also found that the defendant had spent the majority of his time in Florida, returning to Connecticut only for short visits, and that he had not participated actively in any of the management of the property, leaving this responsibility to the plaintiff.

The court also addressed a concern raised by our Supreme Court in its decision remanding the case for a new trial. Although it did not specifically address this issue, the Supreme Court did invite the trial court on remand to reconsider the issue of the parties' respective interests in the property. In this regard, the Supreme Court expressed some concern with the trial court's previous determination that the defendant possessed only a "minimal interest" in the property. Our Supreme Court stated: "[O]ur review of the evidence seriously calls into question the trial court's factual determination that the defendant's contribution was minimal if for no other reason than that the defendant's obligation on the $36,000 mortgage that encumbered the property was ignored by the trial court. . . . Additionally, although the plaintiff testified that she had expended

$35,176 for various expenses associated with the property, she also testified that that money came from the $36,253 she had collected in rental income. Furthermore, the trial court never concluded that she personally had expended any funds for maintenance and repair. Finally, as the defendant points out in his brief, because of the additional credit for one half of the fair rental value of the apartment occupied by the plaintiff, the respective interests of the parties might well change." (Citation omitted.) *Fernandes* v. *Rodriguez*, supra, 255 Conn. 53–54 n.4.

On remand, the trial court addressed the Supreme Court's concerns. The court determined that although the defendant had been essential to the purchase of the property in that he had signed and executed the mortgage and note, this constituted his only activity on the mortgage. The plaintiff made all payments and assumed full responsibility for the management of the property. The court concluded that although the defendant's participation had been essential to securing the mortgage, it had been minimal after this initial step. On the basis of these findings, the court found the defendant's equitable interest in the property to be 5 percent and the plaintiff's to be 95 percent.

After reviewing the court's memorandum of decision and relevant portions of the record, we conclude that the court did not abuse its discretion in finding the equitable interests of the plaintiff and the defendant as it did. The court thoughtfully and thoroughly considered the pertinent factors, including the credibility of the parties, and reached a determination consistent with the evidence before it.

II

The defendant next claims that the court improperly refused to vacate the first sale of the property and to

return his $15,000 deposit. Because it is not properly before us, we decline to review this claim.

As noted previously, the first public sale of the property took place in November, 2001, and the defendant was the high bidder with a bid of $180,300. In accordance with the terms of the sale, the defendant submitted to the court the required deposit of $15,000. Following his unsuccessful attempt to extend the closing date, the defendant failed to proceed timely with the closing, and his deposit consequently was forfeited to the court. The defendant then filed a motion to vacate the sale and requested the return of his deposit. The court denied the motion. On May 16, 2002, the defendant filed a motion to reargue, which was denied by the court the following day.

On June 11, 2002, the defendant filed with this court a motion for permission to file a late appeal from the trial court's denial of his motion to vacate. We concluded that because the court's order satisfied the requirements of the second prong of the *Curcio* test; *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983); it constituted an appealable final judgment from which an appeal must be filed in accordance with, inter alia, Practice Book § 63-1, which affords a party twenty days from the issuance of notice of the judgment to file an appeal therefrom. As the defendant's motion for permission was filed twenty five days after the trial court denied his motion to reargue and because he failed to show good cause for filing a late appeal, we denied the motion.

Despite this court's previously having denied the defendant permission to file a late appeal from the denial of the motion to vacate, he nevertheless raises arguments about and seeks review of that ruling in the

present appeal.[6] This surreptitious attempt to obtain review of a claim as to which we already declined review is improper. We do not consider the merits of this claim.

### III

The defendant next claims that the court violated his right to due process under the fourteenth amendment to the United States constitution by not allowing him sufficient time to prepare for and to attend the January 17, 2002 hearing at which the court denied his motion to extend the closing date. We decline to review this claim.

This motion relates to the first public sale of the property, which we discussed in part II, and would properly have been part of any appeal relating to that sale. As discussed previously, however, the defendant was denied the opportunity to appeal from the court's denial of his motion to vacate the sale. Therefore, this claim is not properly before us.

### IV

The defendant next claims that the court improperly refused to award him one half of the fair rental value of the second floor apartment which, he claims, the plaintiff occupied for some period of time. The defendant specifically takes issue with the court's factual finding that the plaintiff's use of the apartment was incidental and not enough to entitle him to compensation for its fair rental value. We disagree.

"Our standard of review as to the court's factual findings is whether those findings are clearly erroneous

[6] We note also that even though the defendant raises arguments in his brief regarding the denial of his motion to vacate, his appeal form to this court, dated November 28, 2003, does not indicate that he is appealing from that ruling. To the contrary, the appeal form reveals that the defendant seeks review of only the court's November 4, 2003 memorandum of decision distributing the proceeds of the sale and addressing various other related issues.

in light of the evidence and pleadings or, if there is evidence to support them, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *DeMattia* v. *Mauro*, 86 Conn. App. 1, 5, 860 A.2d 262 (2004).

In response to the defendant's claim for rent from the plaintiff for her alleged use of the second floor apartment, the court concluded that "[s]ince the plaintiff made only incidental use of the second floor apartment while it was vacant, no value can be assessed and no liability incurred."

In his brief, the defendant excerpts and loosely paraphrases the plaintiff's testimony and argues that the excerpts, considered together, reveal inconsistencies in the plaintiff's statements regarding her use of the second floor apartment. Our review of the plaintiff's testimony reveals otherwise.

At trial, there was testimony that after a tenant vacated the second floor apartment, the plaintiff had difficulty renting the unit. During this period, she made incidental use of the apartment for about sixteen months. She testified that she stored various items in the apartment and occasionally allowed her children to play or watch television there.

Taken as a whole, the plaintiff's testimony supports the court's conclusion that her use was incidental, and the defendant has not directed this court to any compelling evidence presented at trial indicating otherwise. We accordingly conclude that the court's factual finding was not clearly erroneous.

V

The defendant next claims that the court improperly determined that the plaintiff's use of the first floor apartment commenced in September, 1995, and argues that her use actually commenced in July, 1994. We disagree.

"Our standard of review as to the court's factual findings is whether those findings are clearly erroneous in light of the evidence and pleadings or, if there is evidence to support them, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *DeMattia* v. *Mauro*, supra, 86 Conn. App. 5.

The court determined that the parties acquired title to the property in July, 1994, and immediately commenced occupying the first floor apartment. At this time, the defendant either occupied the apartment with the plaintiff or had the right and opportunity to do so. In September, 1995, the plaintiff obtained an ex parte restraining order to prevent the defendant from entering the premises. The court accordingly determined that September, 1995, would be the start of the period for which the rental value of the first floor apartment must be calculated. The court then proceeded to determine the fair rental value of the apartment from September, 1995, to November 7, 2002, the date on which the defendant's rights in the property were extinguished by the sale to the plaintiff. The defendant argues that the court should have determined the rental value from July, 1994, when the parties first occupied the premises.

The defendant has made no compelling argument or cited any credible evidence that the court's determination was improper. At trial, the defendant himself testified that September, 1995, was the last time he had access to the property due to the issuance of the restraining order. The defendant has failed to demonstrate that he did not have access to the premises beginning in July, 1994, or otherwise to show that the court should have used this date in determining the rental value. Prior to September, 1995, when the restraining order was issued, the defendant had the right to occupy the premises, and his testimony regarding his visits to the property reflects that this was the case. That he

elected not to occupy the premises, choosing instead to reside in Florida, does not entitle him to rent for such period.

The court's decision to establish September, 1995, as the beginning of the plaintiff's exclusive occupancy of the premises was amply supported by the evidence and not clearly erroneous.

## VI

The defendant next claims that the court improperly failed to distribute the proceeds of a check issued to the parties by their insurance company. We agree.

In February, 1999, a check in the amount of $1895.32 was issued to the parties by their insurer for reimbursement for damage to the property from a water pipe break in late 1998. There is both documentary and testimonial evidence regarding this reimbursement in the record.[7]

The defendant claims that the proceeds of this check should have been included in the court's distribution of proceeds, and the plaintiff agrees, conceding that the cost of any repairs would have been included in her accounting of expenses related to the property.

We agree that the insurance proceeds should have been distributed to the parties and accordingly order that the case be remanded to the trial court to distribute the amount of the check in accordance with the parties' equitable interests.[8]

---

[7] Although this check has not yet been cashed by either party and is presumably stale, the plaintiff testified that she spoke with the insurance company and was informed that she can still deposit or cash it.

[8] Neither party has argued nor presented evidence that the proceeds should be divided other than in accordance with their equitable ownership, nor does the record support an alternative basis.

## VII

The defendant next claims that the court improperly determined the income and expenses related to the second and third floor rental apartments. He claims that the plaintiff failed to prove that certain receipts for repair and upkeep expenses that she provided actually pertained to the property at issue. The defendant claims also that the court improperly calculated the amount of rent received by the plaintiff for the two apartments. We disagree.

"Our standard of review as to the court's factual findings is whether those findings are clearly erroneous in light of the evidence and pleadings or, if there is evidence to support them, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id.

In its memorandum of decision, the court included a table setting forth its findings regarding the rental income for the second and third floor apartments for the years 1994 through 2002. For each year, the court indicated whether the property sustained a net profit or net loss and the amount thereof. In several of the years, the plaintiff sustained a net loss because of significant expenses for repairs to and upkeep of the property. These expenses exceeded the rental income, resulting in a total net loss of $2961. The court concluded that although the defendant would ordinarily be entitled to a portion of any rent collected, the fact that the plaintiff sustained a net loss prevents compensation in the present case.

In determining rental income, the court relied primarily on the plaintiff's federal income tax statements and an accountant's spreadsheets submitted by the plaintiff. Finding this evidence credible, the court arrived at its figures. The defendant makes various allegations

regarding improprieties in the determination of rental income, including that the plaintiff retained deposit moneys collected from numerous tenants and that these sums should have been included as rental income. The defendant has offered no credible evidentiary support for this or his other assertions.[9] We accordingly conclude that the testimonial and documentary evidence in the record supports the court's conclusions regarding rental income.

The defendant next argues that the plaintiff submitted some expense receipts without names or addresses and without a notation of where repairs were made. He argues that because the plaintiff owned other investment properties in the New London area, it was incumbent on her to document carefully which expenses related to which property. He argues further that many of the expenses claimed by the plaintiff in maintaining the property were actually expended for the upkeep of certain other rental property and that the court improperly found that they pertained to the premises at issue.

The defendant similarly cites to no credible evidence in the record to support this assertion. The court specifically determined that the documentary evidence submitted by the plaintiff concerning her expenses for the subject property was credible. The court also found that the age and condition of the property made understandable the significant repair and upkeep expenses reflected in the documents.

We accordingly conclude that the court's factual findings as to the rental income and expenses for the second and third floor rental apartments adequately were supported by the record and are not clearly erroneous.

---

[9] Although the evidence was unclear as to this issue, we note that with regard to any deposit moneys, the plaintiff was required to comply with General Statutes § 47a-21 (d).

## VIII

The defendant next claims that the court's determination that the rental value of the first floor apartment was $500 per month from September, 1995, through September, 1997, was contrary to the evidence before the court. We disagree.

"Our standard of review as to the court's factual findings is whether those findings are clearly erroneous in light of the evidence and pleadings or, if there is evidence to support them, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id.

At the remand trial, Howard B. Russ, a licensed real estate appraiser familiar with real estate values in the New London area, testified as to the value of the first floor apartment. In its memorandum of decision, the court included a table setting forth the rental value of the apartment from 1995 through 2002 on the basis of the evidence. The court found that for the period from September, 1995, to September, 1997, the rental value of the first floor apartment was $500 per month.

The defendant takes issue with this figure, contending that it should be much higher. He argues that the second floor apartment, which was smaller than the first floor apartment, had never rented for less than $575 per month and that the plaintiff's appraiser testified that as of 1994, the minimum rental value of the first floor apartment was $600.

We are not persuaded. The amount of rent charged for the second floor apartment, although perhaps minimally relevant to the rental value of the first floor apartment, certainly is not dispositive and does not persuade us that the rental values assigned by the court, in reliance on Russ' testimony, were improper.

Although Russ did testify on cross-examination that the value of the first floor apartment from 1994 through 1997 was approximately $600, his testimony was often unclear and at times inconsistent. He testified on direct examination that the value of the property for the same time period was in the range of $550 to $600, but later stated on redirect that the value was $600. Russ also testified that he inspected the property in May, 2001, and did not know the condition of the property for the years at issue. He also stated at numerous times throughout his testimony that the first floor apartment was not in as good condition as either the second or third floor apartments, which had been renovated and had updated amenities, including new kitchens.

In making a determination of fair rental value, the court looks for guidance to the testimony of experts, but must ultimately make its own determination on the basis of all the circumstances bearing on value. Cf. *New London* v. *Foss & Bourke, Inc.*, 85 Conn. App. 275, 282, 857 A.2d 370 (discussing court's determination of fair market value in eminent domain proceeding), cert. granted on other grounds, 271 Conn. 946, 861 A.2d 1177 (2004). This determination, which constitutes a factual finding, can be upset only when there is no evidence in the record to support it or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. See *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 640, 867 A.2d 860, cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005). That the figure arrived at by the court did not comport, to the precise dollar, with the value testified to by Russ does not mean that the court's finding was unsupported by his testimony or other evidence in the record.

The defendant has failed to persuade us that the trial court's finding as to the fair rental value of the first floor apartment is unsupported by the record, and we

accordingly conclude that this finding was not clearly erroneous.

## IX

We next address the plaintiff's cross appeal. She first claims that the court improperly awarded the defendant one half of the fair rental value of the first floor apartment, in view of its holding that the defendant possessed only a 5 percent equitable interest in the property. We agree.

In the table in its memorandum of decision, the court set forth the rental value of the first floor apartment from September, 1995, when the plaintiff obtained an ex parte restraining order to prevent the defendant from entering the premises, to November 7, 2002, the day before the property was sold. From this information, the court calculated the fair market value of the plaintiff's use of the premises during this period to be $76,980. The court awarded one half of that amount, $38,490, to the defendant.

In assigning the rental value as it did, the court relied on language in footnote 4 of the Supreme Court's decision. See *Fernandes* v. *Rodriguez*, supra, 255 Conn. 53 n.4. Footnote 4 discusses some of the factual findings made by the trial court and states: "Finally, as the defendant points out in his brief, because of the additional credit for one half of the fair rental value of the apartment occupied by the plaintiff, the respective interests of the parties might well change. Consequently, as part of this court's judgment reversing the judgment of the Appellate Court, we order the Appellate Court to remand the case to the trial court to determine whether to order a partition in kind or a partition by sale, *and then* to examine the respective interests of the parties in deciding (1) how to distribute the proceeds of a sale, or (2) whether to award money damages if an order of

partition in kind results in minor inequities." (Emphasis in original.) Id., 54 n.4.

On remand, the trial court addressed this footnote as follows: "In connection with the rental value of the plaintiff's apartment, however, the Appellate Court determined that the value of the plaintiff's occupation of the premises should be divided according to the legal interest of the parties with one half of that value going to the defendant. The Supreme Court accepted certification of the defendant's appeal from the Appellate Court's decision limited to the issue of the trial court's authority to order the defendant to convey his interest to the plaintiff and the plaintiff to pay damages. . . . In footnote 4 of its decision, the Supreme Court stated that it declined to review other issues raised by the defendant. *The Supreme Court did . . . mention, and by implication approve, that the defendant would be entitled to one half of the fair rental value of the apartment on the premises occupied by the plaintiff.* . . . In carrying out the mandate of an appellate court, the trial court is limited to the specific direction of the mandate as interpreted in light of the appellate court opinion. . . . It must then be concluded that although the Supreme Court remanded the case to the trial court for a new trial, the Appellate Court remand that the plaintiff must pay the defendant one half of the rental value of the apartment which she occupied is still in effect." (Citations omitted; emphasis added.) The court apportioned the rental value between the parties accordingly.

The plaintiff argues that because the court found that the defendant possessed only a 5 percent equitable interest in the property, he was entitled only to 5 percent of the fair rental value of the first floor apartment and that the court improperly awarded him one half of the rental value.

We agree that the rental value was apportioned improperly. This court's previous determination that the defendant was entitled to one half of the proceeds was made before the trial court on remand had the opportunity to assess the parties' equitable interests in the property. Furthermore, the Supreme Court's reversal of our decision and unlimited remand to the trial court for a new trial effectively rendered our determination inconsequential. To the extent that footnote 4 of the Supreme Court's decision references this determination, we conclude that the court did not intend for it to be binding on the subsequent trier of fact.

The defendant cites no authority that the distribution must be made in accordance with the parties legal ownership interests, nor have we found any such authority. Furthermore, our Supreme Court has noted that part of the equitable powers of the court in a partition action is the power to compel the parties to account with one another in regard to rents and improvements. See *Penfield* v. *Jarvis*, 175 Conn. 463, 467 n.4, 399 A.2d 1280 (1978). Because the court determined that the defendant possessed only a 5 percent equitable interest in the property, its determination that the defendant was entitled to more than 5 percent of the rental value of the first floor apartment was inconsistent with its other findings. We further conclude that this distribution does not affect the parties' equitable ownership interests.

We therefore order that the case be remanded to the trial court to apportion the rental value of the first floor apartment in accordance with the parties' equitable interests.

X

The plaintiff next claims that the court improperly failed to deduct from the defendant's portion of the total proceeds his equitable portion of the net loss

incurred by the plaintiff in relation to the second and third floor apartments on the premises. We agree.

As noted previously, the court found a net operating loss for the property of $2961. The plaintiff argues that as part of the final distribution, the defendant's percentage of this loss should have been deducted from his share of either the fair rental value or his net proceeds from the sale. In his brief, the defendant agrees that such deduction should have been made.

As the parties are in agreement as to this issue, we order on remand that in accordance with the parties' equitable interests in the property, 5 percent of the plaintiff's net loss, in the amount of $148.05, be deducted from the defendant's total proceeds.

On the defendant's appeal, the judgment is reversed as to the trial court's order to distribute the proceeds of the $1895.32 insurance check. The case is remanded with direction to order the distribution of those proceeds in accordance with the parties' equitable interests.

On the plaintiff's cross appeal, the judgment is reversed as to the award to the defendant of one half of the fair rental value of the first floor apartment and the failure to deduct from the defendant's portion of the total proceeds his equitable portion of the net loss incurred by the plaintiff relative to the second and third floor apartments. The case is remanded with direction to apportion the rental value of the first floor apartment in accordance with the parties' equitable interests and to deduct from the defendant's total portion of the proceeds his share of the net loss relative to the second and third floor apartments. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.