JOHN HURD ET AL. *vs.* ELIZABETH E. HOTCHKISS.

Third Judicial District, Bridgeport, Oct. Term, 1899. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

It is error for the trial court to strike from the complaint the name of
one of several joint plaintiffs, upon motion of the defendant, before
any answer has been filed or hearing has been had as to the interest
of such plaintiff in the subject-matter of the suit. The error is
harmless, however, if it subsequently appears upon a full trial of
all the facts, that the result must have been the same regardless of
the joinder or non-joinder of the parties plaintiff.

Under General Statutes, § 1094, the declarations of a decedent subse-
quent to the execution of a written contract in which it is claimed
that he agreed to convey certain land, to the effect that he still owned
and should not part with such land until paid therefor, are admis-
sible in favor of his sole legatee and devisee when sued for the spe-
cific performance of the alleged contract.

The recorded vote of the directors of a corporation is the only proper
evidence of their acts as such.

Contracts for the conveyance of real estate will not be specifically en-
forced unless they are reasonable, certain, mutual, on good con-
sideration, are consistent with sound policy and free from fraud,
surprise and mistake.

Argued November 2d, 1899—decided January 2d, 1900.

ACTION for the specific performance of a contract to con-
vey certain land, or for damages, brought to the Superior
Court in Fairfield County where John Hurd was, by order
of the court, *Thayer, J.,* dropped as a party plaintiff upon
motion of the defendant, and the case was afterwards tried
to the court, *Elmer, J.;* facts found and judgment rendered
for the defendant, and appeal by the plaintiff for alleged
errors in the rulings of the court. *No error.*

The complaint claimed the specific performance of a written
contract for the conveyance of land, or damages. As amended
it reads as follows: "1. On the 6th day of September, 1886,
John Hurd and Charles B. Hotchkiss, then in full life, exe-
cuted a certain agreement upon the consideration appearing

therein, of which Exhibit A*, hereto annexed, is a copy. 2. On said day the said Charles B. Hotchkiss owned in fee an undivided one half of a large tract of land in said Frank-

---

*EXHIBIT A.

*Memoranda of Agreement.*

1. We, the undersigned, in order more advantageously to carry on the business of manufacturing of lumber in which the firm of John Hurd and Charles B. Hotchkiss are now, and have been for some time past, engaged, hereby agree to form a corporation under the Manufacturing Act of the State of New York, to be known as the St. Regis River Lumber Company.

2. That when said Company shall have been duly organized, we will convey to it all the lands and premises now owned by us in Franklin County, N. Y., the said property to be owned, possessed and used by the said Company, for the purposes of said lumbering business. The said John Hurd and Charles B. Hotchkiss hereby also agree to convey to said Company all the personal property of every kind and nature, and all assets now owned and used by them in the said lumbering business, for the same purpose.

3. The said Company thus formed shall own and possess all the said property of the parties hereto, and hereby intended to be conveyed, and upon receiving the same, shall assume and pay all the obligations of the firm of Hurd & Hotchkiss now existing as copartners, and the business of the said firm shall cease, and thereafter the said business shall be conducted and carried on by and in the name of said corporation.

4. In the allotment of the stock or shares in said Company, each of the parties hereto shall be entitled to, and shall receive the same interest he now owns, which interest shall be represented by the stock of the Company ; the said John Hurd shall have in the allotment two thirds of said stock and Charles B. Hotchkiss and Charles L. Hotchkiss one third part thereof. All the stock shall be deemed pledged to the Company to pay all the outstanding obligations of the firm of Hurd & Hotchkiss, and neither party shall be entitled to receive a greater number of shares of stock than his actual investments represent, except by paying the par value therefor. If, when the inventory of the real and personal property shall have been made out, and the accounts between the said Hurd & Hotchkiss as copartners shall have been stated, it shall appear that the moneys invested in the enterprise exceed the capital stock of the Company, the party who shall have made such advance shall be entitled to the stock of the Company for the amount actually advanced in excess of the said capital stock, capital stock to be increased accordingly.

Dated September 6th, 1886.

In presence of                  JOHN HURD.
    L. B. BUNNELL.               CHAS. B. HOTCHKISS.

lin county, embracing within its limits the following described premises (description omitted). 3. Said corporation was duly formed as contemplated by said agreement, and consists of the said St. Regis River Lumber Company, one of the plaintiffs herein, and the said John Hurd, and said corporation duly performed on its part all of the undertakings appearing in said agreement. 4. Said Charles B. Hotchkiss in his lifetime performed all of his part of said covenants in said agreement, except the conveyance of his interest in the tract of land above described. 5. The plaintiffs, by John Hurd, duly demanded of Elizabeth E. Hotchkiss, on or about July 1st, 1897, a conveyance of said lands to said corporation in accordance with the terms of said agreement. 6. The said Charles B. Hotchkiss died October 10th, 1886. 7. Said Elizabeth E. Hotchkiss is the widow of said Charles B. Hotchkiss, and by the terms of the will, duly executed by him and admitted to probate, obtained title to all of the property and effects of said Charles B. Hotchkiss, including said piece of land above described, and still retains the title to the same. 8. There was a limitation for the presentation of claims on the estate of said Hotchkiss, which was six months from October 23d, 1886, and a further time of two months from July 25th, 1887. 9. Said claim was not presented to said estate during said time."

The answer was in five defenses as follows : —

### First Defense.

1. The defendant specifically denies that the plaintiff is, or at the time of the commencement of this suit was, an incorporated company with power as such to maintain this suit. 2. As to paragraph 1, it is denied that on the 6th day of September, 1886, or at any other time, Charles B. Hotchkiss executed and delivered the agreement Exhibit. A. 3. Paragraph 3 is denied. 4. As to paragraph 5 it is denied that the plaintiff ever demanded of Elizabeth E. Hotchkiss, either directly or indirectly, on or about July 1st, 1897, a conveyance of said land to said corporation, in accordance with the terms of said agreement.

### Second Defense.

The plaintiff has no legal or equitable interest in the sub-ject-matter of this suit, but if there ever was any cause of action for the subject-matter set out in this complaint, the plaintiff has long before the commencement of this action sold and transferred the same, directly or indirectly, to the St. Clara Lumber Company, and has never since obtained, held or pos-sessed any right in or over the cause set out in this complaint.

### Third Defense.

By the law of the State of New York, where the property described in the second paragraph of this complaint is lo-cated, the defendant has an interest in said property as the wife during the lifetime of the said Charles B. Hotchkiss, and as his widow since his decease, which was not, and could not be, affected by the agreement, *Exhibit A*, and this defend-ant, on the allegations of the complaint, cannot be compelled to transfer the title to said land.

### Fourth Defense.

Subsequent to the 6th day of September, 1886, and be-fore the commencement of this suit, and before the right of any other parties had intervened, the parties to said agree-ment, *Exhibit A*, mutually agreed each with the other that said agreement should not be carried out and carried into effect, and that the same should be rescinded and revoked so far as the conveyance to said corporation of the land described in this complaint was concerned, and thereupon both of said parties thereafter substituted the agreement herein referred to for, and in place of, any provisions to which it was appli-cable of the alleged agreement *Exhibit A*.

### Fifth Defense.

The right of action for the cause stated in said amended complaint did not accrue within ten years next before the commencement of this action.

The material facts were these. 1. On the 6th day of Sep-tember, 1886, and for some time prior thereto, John Hurd

and Charles B. Hotchkiss, then copartners in business, were engaged in the lumber business in the Adirondack region, and as such partners were owners of a large tract of land and much personal property in Franklin county.   2. The land described in the complaint consists of a strip used and occupied as a road, upon and over which is operated a railroad known as the Northern Adirondack Extension, or its successor. 3. On the 4th day of September, 1886, there was a meeting at which it was claimed the plaintiff corporation was organized, and said John Hurd was elected president and Charles L. Hotchkiss, son of Charles B. Hotchkiss, was elected secretary. There never was any subsequent meeting of the stockholders, or of the corporation, for the election of officers.   4. On the 6th day of September, 1886, the said partners, with a view of transferring their interest to a corporation which had been or was to be organized, executed an agreement for that purpose, as appears from *Exhibit A.*   5. Said corporation purported to have been duly organized under and by virtue of the laws of the State of New York, under the name of the St. Regis River Lumber Company, and was located in the town of Brandon, Franklin county.   6. At the time of these transactions the said Charles B. Hotchkiss was sick and weak physically and mentally, was suffering from Bright's disease, and was frequently unconscious.   7. On the said 6th day of September, 1886, the said Hurd & Hotchkiss conveyed to said St. Regis River Lumber Company all of the real estate owned by them in said Franklin county, except the strip of land described in this complaint running through said tract, used as a right of way for a railroad, as appears from *Exhibit 2.**   8. The

* * *

*Exhibit 2. This indenture, made this 6th day of September, in the year of our Lord one thousand eight hundred and eighty-six, between John Hurd, Charles B. Hotchkiss, and Elizabeth, his wife, and Charles L. Hotchkiss, of the first part, and the St. Regis River Lumber Company, of the second part, witnesseth, that the said parties of the first part in consideration of the conveyance of property and one dollar to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, have bargained, sold, remised and quit-claimed, and by these presents do bargain, sell, remise and quit-claim unto the paid party of the second part and to its succes-

said St. Regis River Lumber Company, after the conveyance of said land from said Hurd and Hotchkiss, paid the obligations and debts of said firm which existed at the time of the execution of *Exhibit A*. 9. Sometime subsequent to September 6th, 1886 (the exact date does not appear), the assets of the plaintiff company were transferred to the St. Clara Lumber Company of said State of New York. 10. On the 10th day of October, 1886, said Charles B. Hotchkiss died, and by a will duly executed and admitted to probate, the defendant Elizabeth E. Hotchkiss, his widow, received title to this said strip of land, and still owns the same. 11. On the 12th day of March, 1897, John Hurd demanded a deed of the premises in question from this defendant. Sometime previous to this the said railroad company, in its own behalf, endeavored to obtain a deed of the same premises from the defendant.

---

sors and assigns forever, all those several certain pieces and parcels of land situate, lying and being in the County of Franklin and State of New York, which are particularly described in the following conveyances (describing a number of deeds by reference to the parties and the volume and page of the land records).

XIII. Contract for twenty-one hundred and seven and $\frac{24}{100}$ acres of land, between H. E. Pierrepont, and Hurd, Hotchkiss and McFarlane, dated Feb'y 16, 1882. Saving, reserving and excepting from this conveyance the lands taken and now occupied for railroad purposes, being a strip of land extending across the premises hereby conveyed one hundred feet wide, that is to say, fifty feet wide on each side from the center of the rails. Together with all and singular the hereditaments and appurtenances thereto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and all the estate, right, title, interest, claim and demand whatsoever of the said parties of the first part, either in law or equity, of, in and to the above bargained premises, with the said hereditaments and appurtenances. To have and to hold the said premises to the said party of the second part, its successors and assigns, to the sole and only proper benefit and behoof of the said party of the second part, its successors and assigns forever.

In witness whereof, the parties of the first part have hereunto set their hands and seals the day and year first above written.

JOHN HURD. [L. S.]

CHAS. B. HOTCHKISS. [L. S.]

ELIZABETH E. HOTCHKISS. [L. S.]

CHAS. L. HOTCHKISS. [L. S.]

12. On the 14th day of March, 1887, the said Hurd conveyed his interest in said right of way to the Northern Adirondack Extension Railroad Company, which, so far as appears, has ever since retained the same. The copartnership of Hurd and Hotchkiss consisted of said John Hurd and Charles B. Hotchkiss. 13. The deed, *Exhibit 2*, conveyed all the land of Hurd and Hotchkiss, except that occupied by the railroad company for a right of way. 14. The St. Regis River Lumber Company was organized to take over the business of the copartnership of Hurd and Hotchkiss and, for all that appears to the contrary, is still in existence. 15. No evidence was introduced in support of the defendant's fourth defense. 16. From the evidence it does not appear that the defendant, Mrs. Hotchkiss, knew of the contents of the deed, *Exhibit 2*, when she signed it, but signed it, as she avers, in consequence of the statement of John Hurd, that it was done so the business need not be wrecked when her husband died, and that it was for her interest as well as for his own. On this occasion Mr. Hurd was accompanied by his lawyer, but Mr. Hotchkiss and the defendant had no counsel present. 18. No evidence was introduced or explanation offered or given for the delay in demanding a conveyance of these premises, or in bringing this suit. 19. No evidence was offered by the defendant, Mrs. Hotchkiss, in support of her third defense.

*John C. Chamberlain*, for the appellant (plaintiff).

*Goodwin Stoddard* and *William B. Boardman*, for the appellee (defendant).

ANDREWS, C. J. This action was brought originally by John Hurd and the St. Regis River Lumber Company, jointly. Before answering, the defendants moved the court "to drop the plaintiff John Hurd from the proceedings, because of misjoinder and because it appears he has no interest to be affected by this suit." The court granted the motion.

We incline to think this was error. Plaintiffs may ordinarily bring actions jointly or severally, as they consider their

rights to require; just as plaintiffs may claim the relief to which they conceive themselves to be entitled. If it turn out in the progress of the trial that the plaintiffs are not properly named, then the court makes such order as the circumstances require, or renders judgment against them all, or for only such of them as may have established a right to recover. This is authorized to be done by §§ 888 and 1108 of the General Statutes. These sections furnish the only authority of which we are aware, for a court to make an order that one or more of the persons joined as plaintiffs in a complaint shall be forbidden to prosecute; and seem to proceed on the theory that changes as to plaintiffs are to be made at their own request or by their consent. *Chester* v. *Leonard,* 68 Conn. 495; Pom. Rem. § 209. It seems to us that these sections do not authorize the court to strike from a complaint the name of a plaintiff, at the motion of the defendants and against the will of the plaintiffs themselves.

Now that the whole case has been tried and all the facts are shown, it appears that this error is a harmless one. Upon these facts the joining of John Hurd as a plaintiff could make no difference in the result of the case.

The widow of Charles B. Hotchkiss, and his son Charles L. Hotchkiss, were both witnesses on the trial; and each was asked to testify to statements made by Charles B. in his lifetime in respect to his conveying the land here in question. The court permitted the question and the plaintiff objected.

We think the evidence was admissible under § 1094 of the General Statutes.

John Hurd was a witness and was asked this question: "State whether or not at that first meeting of the board of directors (*i. e.* directors of the St. Regis River Lumber Company), they didn't authorize you to manage the affairs of the company, make contracts to bind it, and generally to conduct its business?" This question was objected to and ruled out.

This ruling was correct. The question in form required the witness to declare whether or not the directors of the St. Regis River Lumber Company had done a certain act. The act of the directors of a corporation can be shown only by their

recorded vote. *Savings Bank* v. *Davis*, 8 Conn. 191. If there had ever been a vote of those directors authorizing Mr. Hurd to manage its affairs, then the vote should have been produced. If such a vote had once existed and had been lost, then its terms might perhaps have been proved by oral testimony. But the question asked was not adapted for any such purpose.

The statute of limitations is a bar to the recovery of all money damages. The time limited for the presentation of claims against the estate of Charles B. Hotchkiss expired September 1st, 1887, and this claim was not presented. That was ten years and more before this action was brought.

Every complaint asking for specific performance of a contract to convey real estate is addressed to the discretion of the court, and will not be granted unless the contract is made according to the requirements of law, and is fair, equitable, reasonable, certain, mutual, on good consideration, consistent with policy and free from fraud, surprise or mistake. BUT-LER, J., in *Patterson* v. *Bloomer*, 35 Conn. 57, 63. See also *Quinn* v. *Roath*, 37 Conn. 16, *Platt* v. *Stonington Savings Bank*, 46 id. 476, *Miles* v. *Dover F. I. Co.*, 125 N. Y. 294, *Colson* v. *Thompson*, 2 Wheat. 336, *King* v. *Hamilton*, 4 Pet. 311, and *Scott* v. *Alvarez*, L. R. (1895) 2 Ch. 603.

In the present case the court refused to decree the specific performance, holding that upon a fair preponderance of the evidence submitted in the case and the law applicable thereto, the plaintiff was not entitled to the relief sought. We fully approve of this decision. It is at least uncertain whether the contract ever required the conveyance the plaintiff claims. The deed made by the parties on the same day that the contract was made, and which was apparently intended to be a full compliance with the contract, did not convey the land now claimed. The parties were then all present, the matter was then fresh in their minds, they knew what the contract required. The omission at that time of the land now demanded, is in the nature of an admission that the contract did not require it to be conveyed. It was contemporaneous usage and is entitled to the highest weight in the construction of the contract. Broom's Legal Maxims, 682; *West*

*Hartford* v. *Board of Water Com'rs*, 68 Conn. 323, 334; *Cohens* v. *Virginia*, 6 Wheat. 264, 418. Ten years and more elapsed before any claim was made by any one that this land was intended to be included in that contract. After an acquiescence for so long a time the inference becomes practically irresistible that it never was so intended. *Derby* v. *Alling*, 40 Conn. 410, 436; *Given* v. *Wright*, 117 U. S. 648. This long delay is not explained. Meantime Mr. Hotchkiss died and his estate has been settled. No claim was made upon it within the time limited. It would be clearly unjust at this time to allow this claim. The judgment from which this appeal is taken is without error; more than that, it is the only judgment which could have been rendered in justice to the facts appearing in the record.

There is no error.

In this opinion the other judges concurred.