MARTIN JARAMILLO *v.* ROBERT A. CASE ET AL.
(AC 27437)

Bishop, Rogers and Lavine, Js.

Argued November 29, 2006—officially released May 1, 2007

*Michael S. McKenna,* with whom was *Mary M. Looby,* for the appellant (plaintiff).

*Mark J. Kovack,* for the appellees (intervening defendants).

*Opinion*

LAVINE, J. This appeal concerns an action for the specific performance of a contract of sale for certain real property. Following a trial to the court, the plaintiff, Martin Jaramillo, appeals from the judgment rendered in favor of the defendants and the intervening defendants.[1] On appeal, he claims that the trial court (1) applied an improper legal standard to determine that the defendants, Robert A. Case and Suzanne P. Case, reasonably refused to extend the mortgage contingency date, (2) made findings that are clearly erroneous, (3) improperly concluded that the plaintiff was unable to close the transaction and (4) abused its discretion by precluding him from recalling a witness to testify. We affirm the judgment of the trial court.

Given the nature of the claims, a detailed recitation of the court's finding of facts is necessary. In the summer of 2004, the defendants offered for sale property at 34 Echo Drive, located on the shore of Candlewood Lake in New Milford. The plaintiff was looking to purchase property on Candlewood Lake, and on September 24, 2004, offered to buy the property for $1,825,000 contingent upon several events, including his "obtaining a first mortgage from an accredited money lending institution in the amount of $1,556,750," an event that never occurred. The offer to purchase did not specify a date

---

[1] The defendants named in the summons and complaint are Robert A. Case and Suzanne P. Case. Although they are not parties to the appeal, we refer in this opinion to the Cases as the defendants. Peter N. Reikes and Randi B. Reikes, who purchased the subject property from the defendants, moved to intervene in the action as party defendants. We refer to the Reikeses in this opinion as the intervening defendants.

by which the mortgage loan commitment had to be obtained, but anticipated that a contract for sale would be signed later. The plaintiff represented that he had been prequalified for a mortgage.[2] The defendants accepted the plaintiff's offer to purchase on September 24, 2004. The plaintiff and the defendants entered into a contract of sale (contract) on October 22, 2004.

At the time the defendants received the plaintiff's purchase offer, they were entertaining another offer from the intervening defendants, Peter N. Reikes and Randi B. Reikes, who had offered to buy the property for $1.7 million in cash, contingent on a full inspection.[3] The intervening defendants were disappointed by the turn of events and asked to be informed if the plaintiff did not consummate the transaction.

The plaintiff's inspection of the property revealed a problem with the roof, but he and the defendants reached a compromise. When they agreed to the compromise, the defendants sent the plaintiff a letter dated October 15, 2004, stating in part: "Please let me state that it is not my desire to terminate our discussions. We are very interested in closing with you on the terms outlined here. But please understand that the process of delivering this property to you requires me to make irrevocable changes in my arrangements with our caretaker's family, that could leave us in an awkward position should you not ultimately close. In addition, there are other purchasers who have continued to express interest in the property. Therefore it is very important to us to have assurances that you are committed to completing this transaction in a timely manner."[4]

---

[2] Melissa Cohn, the plaintiff's mortgage broker, testified that the plaintiff had been prequalified for a mortgage of approximately $1,250,000.

[3] Although the defendants did not accept the intervening defendants' offer to purchase, they permitted them to inspect the property.

[4] The court found the following facts that also are relevant to its decision. The defendants, who resided in New York, employed full-time, live-in caretakers for the property. The defendants did not visit the property in the winter and relied on the caretakers to protect the property against frozen

The plaintiff signed the contract on October 22, 2004. The contract was contingent on his obtaining a commitment for a loan in an amount not less than $1,556,750. The contract provided that "[i]n the event such commitment is not obtained by [the plaintiff] on or before *November 5, 2004,* [the plaintiff or the plaintiff's] attorney shall notify [the defendants' attorney] in writing . . . on or before 5:00 P.M. of said date, otherwise this contingency shall be deemed to have been fulfilled and be of no further force and effect. If, however, [the plaintiff] is unable to secure such commitment on or before said date, due notification being given to [the defendants'] attorney as aforesaid, all sums paid hereunder . . . shall be returned to the [plaintiff] and upon return of said sum this Contract shall terminate and be of no further force or effect." (Emphasis added.) The contract did not contain a "time is of the essence" clause, but provided that closing of title was to take place within two months after all of the contingencies had been met. It also required that the defendants convey the premises free of any tenants on the property.

The plaintiff completed a mortgage application for Manhattan Mortgage Company on October 25, 2004. His mortgage broker, Melissa Cohn, requested an appraisal of the property on October 27, 2004. Scott Keland, the appraiser, performed an incomplete inspection on October 30, 2004. To obtain information about the property, Keland attempted to reach the defendants' attorney, Terry Pellegrini, on November 1, 2004, but he was on vacation. Keland made no other attempts to get the

pipes and other weather related problems. The caretakers were informed that the plaintiff would not retain them and arranged to vacate the property before the new year. Furthermore, when the defendants had purchased another weekend home in June, 2004, they immediately listed the Echo Drive property for sale. Because of the caretaker issue and the financial strain of owning two weekend homes, the defendants were concerned about closing on the property before the winter of 2004-2005.

information he needed, but simply waited to speak with Pellegrini.

In a November 4, 2004 letter to Pellegrini, the plaintiff's attorney, Kenneth E. Taylor, requested an extension of the mortgage contingency date from November 5, 2004, to November 12, 2004. Taylor also stated that if the defendants were "not agreeable to an extension, we will have no choice but to ask for a refund of our deposit monies." The defendants refused to grant the extension until November 12, 2004, but agreed to extend the mortgage contingency date until November 9, 2004, and stated that they would consider a further extension beyond November 9, 2004, provided the plaintiff gave them a satisfactory explanation for the delay in obtaining a mortgage loan commitment. Robert Case wanted an explanation for the delay, as six weeks had passed since the defendants had accepted the plaintiff's purchase offer. Taylor's letter was the first indication the defendants had that the plaintiff needed more time to obtain a mortgage loan, but it gave no explanation as to why. Robert Case spoke by telephone with Cohn on November 8 or 9, 2004, in an effort to satisfy himself as to the status of the plaintiff's mortgage application. The conversation became contentious when Cohn refused to discuss the plaintiff's financial situation. In a subsequent conversation with Taylor, Robert Case learned that the plaintiff's potential lender wanted to review the plaintiff's tax returns.

Taylor again wrote to Pellegrini on November 9, 2004, asking for a further extension of the mortgage contingency date from November 9, 2004, to November 16, 2004. The letter stated that Manhattan Mortgage Company had not completed its review of the plaintiff's tax returns and that the plaintiff did not have an unconditional loan commitment. Taylor again told the defendants that if the request for an extension was not granted, the plaintiff had no choice but to ask for a

refund of his deposit. The defendants refused to grant an extension until November 16, 2004. Pellegrini informed Taylor by letter on November 9, 2004, that if the plaintiff was unwilling to waive the mortgage contingency, the defendants would consider the contract terminated as of 5 p.m. that day and would refund the plaintiff's deposit.

On November 10, 2004, Taylor informed Pellegrini that the defendants' refusal to extend the mortgage contingency date to November 16, 2004, was unreasonable under the circumstances, as the plaintiff and his accountant had provided Manhattan Mortgage Company with all of the documents that had been requested and that the incomplete appraisal was the cause of the delay. On November 11, 2004, the defendants returned the plaintiff's deposit to him.

The defendants executed an agreement to sell the property to the intervening defendants for $1,767,500 on November 14, 2004. This was $57,500 less than the price offered by the plaintiff.[5] The agreement with the intervening defendants had no mortgage contingency.

On November 16, 2004, Manhattan Mortgage Company issued a mortgage loan commitment to the plaintiff in the amount of $1,460,000, which is $96,750 less than the amount specified in the contract. The mortgage loan commitment was conditioned on receiving a letter from the plaintiff's accountant stating that the use of business funds in the transaction would have no adverse financial effect on his business. Cohn forwarded the mortgage loan commitment to the plaintiff with a letter informing him that the closing could not be scheduled until he provided Manhattan Mortgage Company with certain documents, including a copy of the contract of sale of

---

[5] The intervening defendants purchased the property on February 22, 2005, subject to a litigation agreement.

his current residence, which was not on the market for sale.

The complaint commencing the underlying action was signed on November 18, 2004.[6] At that time, the plaintiff still did not have an unconditional mortgage loan commitment and was not ready to close the transaction. On November 30, 2004, Taylor informed Pelligrini's office that the plaintiff had received an unconditional mortgage loan and was ready to close the transaction.[7]

In its memorandum of decision, the court stated that the plaintiff's right to specific performance was dependent on whether he had a right to an extension of the mortgage contingency date. The issue, the court stated, was whether the defendants' refusal to grant further extensions beyond the initial four day extension—from November 5, 2004, to November 9, 2004—was unreasonable. The court concluded, on the basis of all the facts and the surrounding circumstances, that it was not. The plaintiff had failed to satisfy his burden of proof that he was ready, willing and able to purchase the property on November 5, 2004, or within a reasonable time thereafter because he had not received a mortgage loan commitment in accordance with the contract. The court concluded that the plaintiff was not entitled to equitable relief and rendered judgment in favor of the defendants and intervening defendants.

I

We will consider the plaintiff's first and second claims together. The plaintiff claims that the court applied the wrong legal standard in determining that the defendants' refusal to extend the mortgage contingency was

---

[6] The plaintiff caused a lis pendens on the property to be filed in the New Milford land records.

[7] The court found that the amount of the mortgage loan commitment was less than that specified in the contract.

reasonable and that the court's finding that the defendants' refusal was reasonable was clearly erroneous. Specifically, the plaintiff argues that the court applied a subjective, rather than an objective, standard to the facts of this case.[8] We disagree that the court's decision

[8] The court stated, in part: "First and foremost, the [defendants'] motivation for refusing a further extension was not based on improper or malevolent impulses. The [defendants] were highly motivated to have the closing completed before winter set in so that they would not have to deal with an empty house during cold weather. They were also concerned about continuing to own two weekend homes. If the sale to [the plaintiff] fell through, they faced the prospect of continuing to own these two homes through the winter until the prime selling season returned in the spring and summer. These are reasonable concerns. The [defendants] had already notified [the plaintiff] when the contract was signed that there were other people interested in the property and that it was important to have [the plaintiff's] assurances that he was committed to completing the transaction promptly. On November 4, 2004, when the first request to extend was made and granted, [Robert] Case tried to determine the reasons for the delay. The reasons were unclear; [Taylor's] letter gave no reasons, and [Robert] Case's discussion with [Cohn] turned unpleasant and inconclusive thereby raising concerns. So, when [the plaintiff] asked for a further extension of the mortgage contingency date on [November] 9, 2004 without explanation, the [defendants] reacted in a reasonable way by accepting [Taylor's] invitation to return the deposit and terminate the contract. They knew that the [intervening defendants] were still interested in the property and did not want to lose them while continuing to wait for [the plaintiff]. Finally, the [defendants] sold the property to the [intervening defendants] for $57,500 *less* than the contract price with [the plaintiff]. The [intervening defendants] were paying cash, without any contingencies, and were ready to close. Clearly the [defendants] sold the property to the [intervening defendants] for less money because of certainty, something that [the plaintiff] was unable to provide. This was not an improper motive.

"Under the facts and circumstances of this case, the extension of four days is found to have been a reasonable time to extend the mortgage contingency date; but a further extension would not have been reasonable. The offer to purchase was made on September 18, 2004, and accepted on September 24, 2004. It contained a mortgage contingency clause for a mortgage which [the plaintiff] was supposed to have been prequalified to receive. On November 4, 2004, when [the plaintiff] asked for a one week extension, without explanation, it was reasonable for the [defendants] to worry that something was amiss and to limit the extension to four days. It was also reasonable for them to refuse a further extension in light of [the plaintiff's] failure to give a satisfactory explanation for the request." (Emphasis in original.)

was based on a subjective view of the facts and that the court's finding was clearly erroneous.

The plaintiff claims that our review is plenary because the question to be determined is one of law.[9] The intervening defendants argue that the clearly erroneous standard applies. "In real estate contracts, the fact that a specific time is fixed for payment or for conveyance does not make time of the essence—at least, it does not make performance at the *specified* time of the essence. . . . When the parties to a real estate contract want to fix a specific date for performance, we generally have required them to express specifically in the contract that time is of the essence; otherwise, performance within a reasonable time will satisfy the contract. . . . Ordinarily, what constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of each case." (Citation omitted; emphasis in original; internal quotation marks omitted.) *DeMattia* v. *Mauro*, 86 Conn. App. 1, 7, 860 A.2d 262 (2004). "In determining what is a reasonable time, *we must look to the act requested.*" (Emphasis added.) *Brzezinek* v. *Covenant Ins. Co.*, 74 Conn. App. 1, 6, 810 A.2d 306 (2002), cert. denied, 262 Conn. 946, 815 A.2d 674 (2003).

"Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation

---

[9] The plaintiff contends that the issue requires us to construe the contract between the parties. We need not construe the contract, as the court found that it did not contain a "time is of the essence clause," and there is no claim that the court's finding was clearly erroneous.

marks omitted.) *Cox* v. *Burdick*, 98 Conn. App. 167, 177, 907 A.2d 1282, cert. denied, 280 Conn. 951, 912 A.2d 482 (2006).

The plaintiff claims that the court improperly applied a good faith, subjective standard, rather than a reasonableness, objective standard, to the facts in order to determine whether the defendants' refusal to extend the mortgage contingency date for a second time was reasonable. Notwithstanding the fact that the court used some nomenclature indicative of a subjective standard; see footnote 8; we do not agree that the court's ultimate conclusion applied a subjective test.

In this case, the requested act was an extension of the mortgage contingency date. We agree that the standard to be applied is the reasonableness standard. See *DeMattia* v. *Mauro*, supra, 86 Conn. App. 7–10 (reasonable period of time to close real estate transaction); *Brzezinek* v. *Covenant Ins. Co.*, supra, 74 Conn. App. 4–6 (reasonable time in which to respond to settlement offer); see also *Katz* v. *West Hartford*, 191 Conn. 594, 596–99, 469 A.2d 410 (1983) (time in which to accept dedication of public highway); *Cruz* v. *Drezek*, 175 Conn. 230, 238–39, 397 A.2d 1335 (1978) (length of time in exercise of reasonable care to discover defective premise).[10]

"Reasonableness . . . is an objective standard, involving an analysis of what a person with ordinary

---

[10] The plaintiff went to some length to distinguish the objective and subjective standards, citing *Aubin* v. *Miller*, 64 Conn. App. 781, 787, 781 A.2d 396 (2001) (reasonable effort to secure mortgage); *K. A. Thompson Electric Co.* v. *Wesco, Inc.*, 27 Conn. App. 120, 126–27, 604 A.2d 828 (1992) (reasonable effort to secure approval of proposed equipment); *Phillipe* v. *Thomas*, 3 Conn. App. 471, 473–76, 489 A.2d 1056 (1985) (reasonable effort to secure mortgage). Those cases concern the *standard of effort* to be made by a party to a contract to obtain some type of approval. The defendants' refusal to grant the plaintiff a second extension of time to secure a mortgage is not an act that requires the securing of some type of approval.

prudence would do given the circumstances, without accounting for any particular knowledge or skill. . . . In contracts as in tort cases, [t]he test is external, not subjective, that is, the question is how would a person of ordinary prudence in such a situation have behaved, not how did the defendant in fact behave. . . .

"Evidence of what is reasonable, however, may be relevant to determining one's good faith and is not excluded from playing a part in that determination. . . . Similarly, one's good faith may be relevant in ascertaining the reasonableness of his actions." *Phillipe* v. *Thomas*, 3 Conn. App. 471, 475, 489 A.2d 1056 (1985). Furthermore, "there is an obligation of good faith implicit in all contracts." J. Perillo & J. Calamari, Contracts (5th Ed. 2003) § 11.38, pp. 474–75.

Our review of the findings in the court's memorandum of decision reveals that the court stated its factual finding in language that referenced both objective and subjective factors. Although the court's initial determination is stated in subjective language, i.e., "improper or malevolent impulses," that determination is supported by an analysis of the specific facts on the basis of what a reasonable person would have done *under the circumstances*. The court reached its conclusion that the defendants were not motivated by an improper purpose by stating a number of undisputed facts. See footnote 8. Those facts, the court found, would have influenced a reasonable person to deny the plaintiff's second request for an extension of the mortgage contingency date. The court also noted that Robert Case had informed the plaintiff of the defendants' need to sell the property before winter weather set in and the existence of another offer.

"A definite date for performance may be specified in the agreement, without being of the essence. By giving notice, either party has power to make performance

itself essential as a condition of the party's duty, provided that the notice leaves the other party a reasonable time for rendering the performance. . . . [S]uch a notice may shorten the time allowed by the law. The law would have held that performance within a reasonable time after the agreed date would be sufficient to hold the other party to the promise, *while the notice, if given a reasonable time before the agreed date, makes performance by that date a condition.*

"The reasonableness of a time limit, whether fixed by agreement or by a party's notice, or otherwise, depends upon the character of the performance promised and upon all of the surrounding circumstances that the parties know or have reason to know. It also depends upon whether or not part performance has already been rendered and whether or not there will be an unjust forfeiture." (Emphasis in original.) 8 A. Corbin, Contracts (Rev. Ed. 1999) § 37.10, pp. 412–13.

The circumstances of this case demonstrate that the defendants were motivated to sell the property because they had acquired another vacation home and did not want the expense of owning two vacation homes. To care for the property in their absence, the defendants had caretakers who were tenants. The plaintiff wanted to purchase the property without the tenancy. Because winter was approaching and being without caretakers, the defendants were concerned about waste and deterioration. We conclude that these circumstances were a reasonable basis for not extending the mortgage contingency beyond November 9, 2004.

Furthermore, the plaintiff had represented that he had been preapproved for a mortgage loan. The fact that the plaintiff was having difficulty securing a mortgage was contrary to his representation. That discrepancy coupled with the fact that Manhattan Mortgage Company wanted to look at the plaintiff's tax returns

would raise questions in the mind of a reasonable person as to whether the plaintiff's application would be approved at all. In addition, the plaintiff himself acknowledged, through Taylor's letter of November 4, 2004, that if the defendants were unwilling to extend the mortgage contingency date, he would consider the contract terminated and seek return of his deposit. A reasonable person could expect that, after making such a representation, the buyer anticipated that the seller might deny the request.

Additionally, in his October 15, 2004 letter, Robert Case made the plaintiff aware of the reasons the defendants wanted assurance that the plaintiff could timely close the sale. That letter put the plaintiff on notice of the defendants' need to sell the property in a timely fashion. The fact that the defendants sold the property to the intervening defendants for less than the plaintiff had offered them lends credence to the defendants' stated desire to sell the property as soon as it was feasible to do so.

In his brief, the plaintiff contends that it was the defendants' fault that approval of his mortgage application was delayed because the appraiser could not communicate with Pellegrini about the number of deeds to the property. This argument is based on Cohn's testimony at trial, not on facts known to Robert Case at the time he denied the plaintiff's request for a second extension of the mortgage contingency date. Taylor's first letter gave no reason for the request. When he later spoke with Robert Case by telephone, Taylor indicated that Manhattan Mortgage Company needed to review the plaintiff's tax returns. This was the information known to Robert Case at the time he made his decision. Furthermore, if the reason for the delay in obtaining mortgage loan approval was the incomplete appraisal, Cohn could have informed Robert Case of that at the

time she refused to discuss the plaintiff's financial matters with him.

We conclude that the court not only applied the proper legal standard to the facts of this case, but also properly determined that the defendants' refusal to extend the mortgage contingency date for a second time was reasonable.

## II

The court found that the plaintiff was not able to close the transaction for the purchase of the property because he did not have an unconditional mortgage loan commitment by November 16, 2004. The plaintiff claims this finding is clearly erroneous. We disagree.

Specific performance is an equitable remedy permitting courts to compel the performance of contracts for the sale of real property, and certain other contracts, pursuant to the principles of equity. See 12 A. Corbin, Contracts (1979) § 1142, pp. 194–201. "Every complaint asking for specific performance of a contract to convey real estate is addressed to the discretion of the court, and will not be granted unless the contract is made according to the requirements of law, and is fair, equitable, reasonable, certain, mutual, on good consideration, consistent with policy and free from fraud, surprise or mistake." *Hurd* v. *Hotchkiss*, 72 Conn. 472, 480, 45 A. 11 (1900).

Even when a valid contract is found, there is no right to specific performance, but rather "[t]he granting of specific performance of a contract to sell land is a remedy which rests in the broad discretion of the trial court depending on all of the facts and circumstances when viewed in light of the settled principles of equity." (Internal quotation marks omitted.) *Webster Trust* v. *Roly*, 261 Conn. 278, 284, 802 A.2d 795 (2002). "The determination of what equity requires in a particular

case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Electrical Wholesalers, Inc.* v. *M.J.B. Corp.*, 99 Conn. App. 294, 301, 912 A.2d 1117 (2007).

"It is well settled that a buyer seeking specific performance has the burden of proving that he or she is ready, willing and able to purchase the premises, even when a seller refuses to participate in or attend a closing, or has failed to satisfy a condition of the contract." *Romaniello* v. *Pensiero*, 21 Conn. App. 57, 60, 571 A.2d 145 (1990). Whether a buyer is ready, willing and able to make a purchase is a question of fact. *R. Zemper & Associates* v. *Scozzafava*, 28 Conn. App. 557, 560, 611 A.2d 449 (1992).

The plaintiff cites *Romaniello*, out of context, for the proposition that to prevail at the trial, all he had to do was prove that "he *could* have obtained a mortgage commitment . . . ." (Emphasis in original.) *Romaniello* v. *Pensiero*, supra, 21 Conn. App. 61. The facts of *Romaniello* are entirely different from the ones in this case. In *Romaniello*, the parties never set a closing date because the seller refused to prepare a contract. Id., 60. At trial, the seller claimed that the buyer was never able to perform prior to June, 1988. Id. The finder of fact found that the buyer was able to purchase the premises for the agreed price at the time of trial in June, 1988, and his financial condition then was the same as it had been previously. Id., 61. The rule enunciated in *Romaniello* is that a seller's repudiation excuses a buyer's readiness to perform but it does not excuse a buyer's ability to perform. See *Steiner* v. *Bran Park Associates*, 216 Conn. 419, 428, 582 A.2d 173 (1990).

The facts found by the court here demonstrate that the plaintiff did not have a mortgage loan commitment until November 16, 2004, and that the commitment was

conditional and for an amount less than that required by the contract. The plaintiff did not waive the contract's mortgage contingency until November 30, 2004. The plaintiff did not demonstrate the ability to perform until November 30, 2004, which was a date after the one to which the parties had agreed for satisfaction of the mortgage contingency. See *Billy & Leo, LLC* v. *Michaelidis*, 87 Conn. App. 710, 717, 867 A.2d 119 (2005) (although buyer offered proof of loan approval and cash deposits, all of them were obtained after date specified in contract and did not total full price). For those reasons, the court's finding that the plaintiff was not able to close the transaction because he did not have an unconditional mortgage by November 16, 2004, was not clearly erroneous.

## III

The plaintiff's last claim is that the court abused its discretion in precluding him from recalling one of his witnesses to testify. We disagree.

The plaintiff contends that the court failed to grant a continuance in order for him to recall Cohn to testify. Our review of the transcript[11] reveals that trial was held on three days: September 22 and 23, and October 12, 2005. Cohn testified on September 22, 2005, but had not undergone recross-examination. She was unable to return to court the next day. On October 12, 2005, after Taylor and the plaintiff testified but before the plaintiff rested, the plaintiff's counsel represented to the court that he had intended to recall Cohn at that time, but that he had been advised earlier in the morning that "helicopter flights [were] grounded due to the weather,

---

[11] Practice Book § 67-4 provides in relevant part: "The appellant's brief shall contain the following . . .

"(c) A statement of the . . . facts of the case bearing on the issues raised. The statement of facts shall be in narrative form [and] shall be supported by appropriate references to the page or pages of the transcript . . . ." The plaintiff has failed to comply with this rule of practice in regard to the fourth issue on appeal.

and [that] apparently [Cohn] intended to come up by helicopter." The plaintiff's counsel then stated: "So, Your Honor, I'm asking for a brief continuance to early next week to just put . . . Cohn on the [witness] stand for the short amount of testimony that I have for her."

The court stated that it would not be available the following week. The plaintiff's counsel then requested permission to make an offer of proof. The court denied the request for a continuance, but granted counsel permission to make the offer of proof that included discussion of a "clear to close" letter, which counsel described as an "internal notation" between mortgage loan lenders.[12] Following the offer of proof, the court stated that the clear to close letter was not in evidence.[13]

"A motion for continuance is addressed to the discretion of the trial court, and its ruling will not be overturned absent a showing of a clear abuse of that discretion. . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of trial. . . . Every

[12] The plaintiff made the following offer of proof: "Cohn would have testified today that the plaintiff was never given a clear to close letter, that such a document doesn't exist [and that] the clear to close is just an internal notation between Washington Mutual and Manhattan Mortgage Company. There isn't, in fact, no document that exists. She wanted to clarify that issue, and we ended before she had the opportunity to do that.

"And in addition, that the practice of Manhattan Mortgage Company is to just contact you, the borrower, by telephone and advise the borrower that they were cleared to close, and she, in fact, did this in this case. She made the call to [the plaintiff].

"Finally, she would have testified that with regard to the comment on the cover letter that was sent to [the plaintiff] along with the mortgage commitment letter, the statement that [the plaintiff] is required to provide a contract of sale of his current residence was not a condition of the actual mortgage commitment. That's it."

[13] The subject of a clear to close letter came up in Cohn's redirect testimony. Counsel for the intervening defendants objected to such a letter's being introduced into evidence because the plaintiff had not produced the document in response to a request to produce and motion to compel. The court sustained the objection.

reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . In deciding whether to grant a continuance, the court of necessity balances several factors, including the importance of effective case flow management and the relative harm or prejudice to both parties. . . . Absent a showing of actual prejudice, the court will not be found to have abused its discretion when denying [a party's] motion for a continuance." (Citations omitted; internal quotation marks omitted.) *Irving* v. *Firehouse Associates, LLC*, 82 Conn. App. 715, 719–20, 846 A.2d 918 (2004). "An abuse of discretion must be proven by the appellant by showing that the denial of the continuance was unreasonable or arbitrary. . . . One relevant factor that a court may consider in evaluating a motion for a continuance is the perceived legitimacy of the reasons proffered in support of the motion." (Citations omitted; internal quotation marks omitted.) *Hyllen-Davey* v. *Plan & Zoning Commission*, 57 Conn. App. 589, 599–600, 749 A.2d 682, cert. denied, 253 Conn. 926, 754 A.2d 796 (2000).

Under the circumstances of this case, the court's failure to grant the plaintiff's motion for continuance on the third day of trial was not arbitrary or unreasonable. As the court noted, it had not admitted evidence concerning a clear to close letter. Testimony to deny the existence of such a letter, therefore, was unnecessary. It also was not necessary for Cohn to testify as to the usual practice of notifying a client of mortgage approval, as she had testified that in this case her assistant would have telephoned Taylor to let him know that the mortgage was cleared to close.

The plaintiff contends that it was harmful not to permit Cohn to testify about the condition contained in the mortgage loan commitment letter regarding a contract of sale of the plaintiff's current residence because the court erroneously cited it in its memorandum of

decision. We do not agree. First, the plaintiff put the mortgage loan commitment letter into evidence and could have brought the alleged discrepancy to the attention of the court at the time the exhibit was entered. Cohn testified that the mortgage loan commitment letter is "technically a conditional agreement . . . that is a commitment letter subject to satisfaction of certain conditions." Furthermore, even if a contract for the sale of his residence was not a condition of the plaintiff's obtaining a mortgage, any reliance on that fact by the court was harmless error, if any. Taylor, the attorney representing the plaintiff in the real estate negotiations, testified that the mortgage loan commitment letter, which contained a list of conditions, was conditional and that he was of the understanding that the plaintiff needed the mortgage loan to close the transaction. Significantly, the amount of the loan approved in the mortgage loan commitment was less than that stated in the contract for sale of the property. We therefore conclude that the court did not abuse its discretion by denying the plaintiff's request for a continuance.

The judgment is affirmed.

In this opinion the other judges concurred.