KENNY HILL *v.* JOSEPH RAFFONE

KENNY HILL *v.* 119 OLIVE STREET, LLC
(AC 27717)

Bishop, Lavine and Foti, Js.

Argued May 22—officially released September 18, 2007

*Douglas J. Varga*, with whom, on the brief, was *Sarah W. Poston*, for the appellant (plaintiff).

*Jeffrey M. Sachs*, for the appellees (defendants).

*Opinion*

FOTI, J. The plaintiff, Kenny Hill, appeals from the judgments of the trial court, rendered in favor of the defendants Joseph A. Raffone[1] and 119 Olive Street, LLC, after a trial to the court in this consolidated action sounding in contract for the sale of real property. On appeal, the plaintiff claims that the court abused its discretion by refusing to order specific performance. Specifically, the plaintiff claims that the court (1)

---

[1] Raffone is the sole member of the defendant 119 Olive Street, LLC. For convenience, we refer in this opinion to Raffone as the defendant.

improperly applied the election of remedies doctrine, (2) incorrectly found that it would be difficult for the court to fashion and enforce an order for specific performance, and (3) incorrectly found that his attorney made a serious misrepresentation in his letter to the defendant's attorney. We affirm the judgments of the trial court.

The property in question, 119 Olive Street, New Haven, was purchased in 2000 by the defendant.[2] On September 6, 2001, the defendant and the plaintiff signed a written contract under which the property would be transferred from 119 Olive Street, LLC, to the plaintiff for $307,500. The contract included by reference a first addendum, which concerned repairs that needed to be made to the premises.[3]

The defendant's father, Joseph Raffone, Sr., acted as his broker. On October 3, 2001, the plaintiff's real estate broker, John Migliaro, faxed the defendant a report of the plaintiff's inspection of the property. This report listed several repairs that still had to be made by the defendant. On October 24, 2001, the plaintiff and the defendant signed a second addendum to the contract. This addendum contained five clauses, some concerning the repairs previously mentioned and the others concerning the closing. Specifically, the plaintiff wanted the defendant to credit the plaintiff $1000 at the closing for defects that the plaintiff found during the inspection and wanted repaired, and the plaintiff wanted to pay

---

[2] The defendant subsequently transferred the property to 119 Olive Street, LLC. The trial court noted in its memorandum of decision that at the time of trial, the property had been transferred back to the defendant.

[3] The first addendum contained four additional terms: that the seller had to provide a copy of the building permit to the buyer, that the seller had to complete installation of four new, full and completely operational gas heating systems, that the seller had to remove all debris from the basement, hallways, common areas and grounds, and that the seller had to paint the third floor porch.

an additional deposit of $9000 when all conditions of the agreement had been satisfied.

On November 12, 2001, the plaintiff inspected the property and observed that neither the heating systems nor the installation of the Sheetrock on the basement ceiling had been completed. Joseph Raffone, Sr., assured the plaintiff that the work would get done. As a result of that assurance, the plaintiff paid him the $9000 deposit. On December 3, 2001, the defendant requested an extension of the closing date to January 15, 2002, and on December 6, 2001, the plaintiff agreed to the extension. On January 10, 2002, the plaintiff and the defendant inspected the property together and found several incomplete repairs, including the installation of two of the new heating systems. On that same day, the plaintiff's attorney sent a letter to the defendant's attorney. The letter stated that there were several repairs that had to be done and asked the defendant to keep the plaintiff informed of progress on those repairs.

In the weeks that followed, several letters passed between the parties and their attorneys. These letters discussed repairs that had been completed and repairs that needed to be completed prior to the closing. On January 30, 2002, the plaintiff's attorney sent the defendant's attorney a letter listing the repairs that had not been completed and also noting several credits that he believed should be granted at closing. In addition, the letter stated that because interest rates had risen from the time of the original closing, the defendant "should contribute to any buydown required to get the rates close to those at the original closing." The defendant's attorney responded to the letter by stating that the defendant would install a new boiler for the second floor and that his client would be ready, willing and able to convey the property to the plaintiff on February 8, 2002. In response to the defendant's attorney, the plaintiff's attorney, in his second letter dated January

30, 2002, stated that his rate lock would expire if the transaction occurred after January 31, 2002, and that if the closing did not take place on that date, the defendant would be responsible for paying the plaintiff $5000 in consideration for the extension of the closing date. The court found that there was no evidence in the record that the plaintiff's interest rate was going to rise if the parties did not close by or before January 31, 2002. There was, however, evidence that the plaintiff's mortgage commitment was valid through February 12, 2002, which was beyond the requested February 8, 2002 extension date.

On January 31, 2002, the plaintiff's attorney sent another letter to the defendant's attorney in which he stated that the closing had to take place that day on the terms of his previous letters, or the parties had to resolve all issues by 5 p.m. that day. If neither of these conditions was met, then the letter would serve as a demand for the return of the deposit. On February 6, 2002, the defendant's attorney sent the plaintiff's attorney a letter in which he stated that if the plaintiff was not willing to close, the defendant was willing to return the plaintiff's deposit in exchange for an execution of mutual releases. Thereafter, the plaintiff filed separate actions against the defendant and 119 Olive Street, LLC, alleging breach of contract and seeking specific performance as the remedy. He claimed that the defendants had breached the contract by failing to comply with all of the plaintiff's conditions: installing four new heating systems, painting the third floor porch and repairing the basement Sheetrock. Both defendants filed counterclaims, alleging that the plaintiff had breached the contract and therefore that they were entitled to keep the deposit as liquidated damages.[4] The court rendered

[4] The court rendered judgments in favor of the plaintiff on the counterclaims. As to the defendant's counterclaim, the court found that the defendant had breached the contract and, therefore, was not entitled to recover on his counterclaim. The defendant does not challenge those findings on appeal.

judgments in favor of the defendants on the complaints and in favor of the plaintiff on the counterclaims. Although the court found that the defendant had breached the contract and that the plaintiff was entitled to the return of his deposit, the court held that awarding specific performance would not be equitable.[5] The plaintiff appeals from the judgments, challenging the court's refusal to award specific performance of the contract. Additional facts will be set forth as necessary.

The plaintiff claims that the court abused its discretion when it failed to order specific performance after finding that the defendant had breached the contract. Specifically, the plaintiff argues that the factual findings the court relied on in fashioning its remedy were clearly erroneous. We disagree.

Prior to examining the plaintiff's claim, we set forth the legal principles that guide our review. "Specific performance is an equitable remedy permitting courts to compel the performance of contracts for the sale of real property, and certain other contracts, pursuant to the principles of equity." *Jaramillo* v. *Case*, 100 Conn. App. 815, 828, 919 A.2d 1061, cert. denied, 283 Conn. 902, 926 A.2d 670 (2007). Our standard of review is abuse of discretion because "[t]he granting of specific performance of a contract to sell land is a remedy which rests in the broad discretion of the trial court depending on all of the facts and circumstances when viewed in light of the settled principles of equity." (Internal quotation marks omitted.) Id.

A court's decision to deny the remedy of specific performance in a breach of contract action is fact specific. "Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly

---

[5] The court also found, on the basis of the representations of the parties that 119 Olive Street, LLC, no longer owned the property, that the plaintiff's action against it could not succeed.

erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation marks omitted.) Id., 823.

I

The plaintiff first claims that the court improperly applied the election of remedies doctrine because his choice of specific performance was consistent with his prior request that his deposit be returned if a closing was not possible.[6] The election of remedies doctrine, in essence, states that "a party who manifests the choice of one available remedy among others by bringing suit or otherwise has not barred his right to pursue any other remedy unless the remedies are inconsistent and the other party materially changes his position in reliance on the manifestation." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *DaSilva*, 231 Conn. 441, 449, 650 A.2d 551 (1994).

The court's finding that the plaintiff's request for specific performance was inconsistent with his previous statement is supported by the record. On January 31, 2002, the plaintiff, through his attorney, clearly stated that if his demands were not met he wanted to terminate the transaction. Therefore, the court's finding that the

---

[6] The plaintiff cites a Florida case, *Chambers* v. *Siler*, 417 So. 2d 701 (Fla. App. 1982), for the proposition that the filing of an action for specific performance rescinds any prior offer to terminate the parties' obligations under a purchase and sale agreement. We do not find this argument persuasive. Nevertheless, even if the argument were persuasive, the plaintiff would not automatically be entitled to the remedy of specific performance. The remedy of specific performance is within the discretion of the court to grant after it has considered all the facts and circumstances in light of the principles of equity.

prayer for an order of specific performance was incongruous with the plaintiff's letter is not clearly erroneous. Furthermore, on February 6, 2002, the defendant's attorney sent the plaintiff's attorney a letter in which he stated that the defendant was willing to return the plaintiff's deposit in exchange for an execution of mutual releases, thus offering to rescind the contract. Therefore, the defendant materially changed his position in reliance on the plaintiff's statement. Accordingly, we conclude that the court properly applied the election of remedies doctrine.

## II

The plaintiff next claims that the court incorrectly found that it would be difficult for the court to fashion and enforce an order for specific performance. It has long been established that "the court cannot enforce specific performance of an agreement whose terms are indefinite and uncertain." (Internal quotation marks omitted.) *Gendelman* v. *Mongillo*, 96 Conn. 541, 545, 114 A. 914 (1921). The court found that an order of specific performance would be "difficult to fashion and a nightmare to enforce" because the parties had argued up to the very end regarding the precise terms of the transaction. The court found that it would be difficult to supervise the installation of a proper heating system in two of the units and to compensate appropriately one party or another for the fact that interest rates had changed. This evidence supports the conclusion that judgments of specific performance would be "difficult to fashion and a nightmare to enforce."

## III

Finally, the plaintiff claims that the court incorrectly found that his attorney made a serious misrepresentation in one of his letters to the defendant's attorney. The court, however, found that the plaintiff failed to act equitably following the defendant's breach of the

contract. "For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands." (Internal quotation marks omitted.) *Emigrant Mortgage Co.* v. *D'Agostino*, 94 Conn. App. 793, 804, 896 A.2d 814, cert. denied, 278 Conn. 919, 901 A.2d 43 (2006). The court found that the plaintiff did not come into court with "clean hands." First, the court found that his demands for additional money, including $5000 as consideration for an extension of the closing and $15,000 in escrow for installation of the new heating systems, were unjustified by the contract. Second, the court found that the plaintiff's lawyer's misrepresentation regarding the expiration date of the rate lock was unfounded by the evidence presented and, as such, was a serious misrepresentation. The plaintiff argues that his attorney was referring to a problem that would occur in the future if the closing did not take place prior to the expiration of his interest rate. The plaintiff states that although his attorney may have been mistaken regarding the expiration date, there is no evidence that it was an intentional misrepresentation. The court, not convinced by this argument, found that the plaintiff's acts constituted inequitable conduct. These findings, fully supported by the record, are not clearly erroneous.

None of the court's factual findings was clearly erroneous. The court, therefore, could have concluded properly that the balance of the equities weighed in favor of the defendant on the basis of the particular facts and circumstances of this case. We conclude that the court did not abuse its discretion in refusing to order specific performance on the ground that it would not be equitable.

The judgments are affirmed.

In this opinion the other judges concurred.